**Affirmed and Majority and Concurring Opinions filed June 4, 2019.**



In The

# Fourteenth Court of Appeals

### NO. 14-18-01070-CV

## IN THE INTEREST OF P.W., A CHILD

**On Appeal from the 315th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2017-05035J**

## M A J O R I T Y   O P I N I O N

In this accelerated appeal in a termination-of-parental-rights case, we consider as an issue of apparent first impression whether a parent may get review of the sufficiency of the evidence to support the trial court's findings under subsections (D) and (E) of Family Code section 161.001(b)(1), even though the parent does not challenge either the trial court's finding under another subsection of section 161.001(b)(1) or the trial court's finding that termination of the parent's parental rights is in the child's best interest. Based on recent cases from the Supreme Court of Texas, we must determine whether the appellant's challenge to the subsection (D) and subsection (E) findings has merit and detail our analysis,

even if another finding that is listed in the final order as a ground for termination provides a proper basis for the predicate act required under section 161.001(b)(1) and even if the appellant does not challenge the trial court's best-interest-of-the-child finding. We have the power to grant an appropriate appellate remedy if we sustain the appellant's challenge to the trial court's findings, and this appellate remedy would preclude the Department of Family and Protective Services from using the trial court's termination order as a basis for a subsection (M) finding in a future case seeking termination of the appellant's parental rights as to another child. Thus, contrary to the Department's arguments, the issue of whether the evidence suffices to support the trial court's findings stands ripe for resolution. This issue is not moot, and our opinion addressing the issue does not amount to an advisory opinion.

We conclude that the record contains legally and factually sufficient evidence to support the trial court's finding under subsection (E), so we need not address the sufficiency of the evidence to support the trial court's finding under subsection (D). We affirm the trial court's final order terminating the parent-child relationship between the appellant and the child ("Final Order").

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant ("Mother") gave birth to Philip[1] in 2017, in Oregon. Mother listed John ("Father") as Philip's father on the child's birth certificate. When Father went to jail for domestic abuse, Mother and Philip moved to Houston, Texas.

The Department became involved with the family when Mother and four-month-old Philip were admitted to a hospital in Harris County because Mother was

---

[1] We use pseudonyms to refer to the child and the father. *See* Tex. Fam. Code Ann. § 109.002(d); Tex. R. App. P. 9.8.

having suicidal ideations and harming herself. Mother blamed these behaviors on Father's threat to leave her. Mother told hospital staff members that she did not want to harm Philip. Mother said that she needed help and explained that she could not take care of the child.

Mother told a Department investigator that before she met Father she was "doing as many drugs as possible." Mother confirmed that she had been diagnosed with bipolar disorder and major depressive disorder. The domestic-abuse charges for which Father had been incarcerated arose out of an incident in which Father physically abused Mother when he was intoxicated. In commenting on the abuse, Mother reported that Father was under great stress as a result of the couple being homeless.

Before Mother's release from the hospital, she agreed to let Casa de Esperanza, a children and family services charity, care for Philip until she could get her life more settled. Three months later, the Department initiated this suit requesting termination of Mother's parental rights under subsections (C), (D), (E), (K), (N), and (O) of section 161.001(b)(1) of the Family Code and asking the trial court to name the Department as Philip's sole managing conservator. In the meantime, the trial court named the Department as Philip's temporary managing conservator. At some point, presumably after Father's release from jail, Mother moved back to Oregon to be with Father, without ever having visited Philip.

Trial on the Department's petition seeking termination of the parental rights of Mother and Father began fifteen months after Mother left Philip in the care of Casa de Esperanza. At trial, the Department's caseworker, Mitchelle Joseph, testified that the Department initiated its investigation when it received allegations that Mother had attempted to stab herself in the stomach while she was home with Philip. The caseworker testified that she believed it would be in the child's best

interest to have Mother's parental rights terminated because Mother had never contacted Philip and Mother had failed to provide him with financial support, failed to demonstrate the ability to provide him with a stable home, and had not addressed Mother's own mental health and substance-abuse issues.

The volunteer advocate (sometimes referred to as the "Texas Court Appointed Special Advocate" or the "CASA volunteer"[2]), Samuel Todd, recommended termination of Mother's parental rights because Mother had shown no interest in working on her family service plan. According to Todd, Philip was thriving in a loving foster home. Todd recommended that Philip remain with his foster parents.

In closing argument, the Department urged the trial court to terminate Mother's parental rights under subsections (N) (constructive abandonment) and (O) (failure to complete the court-ordered family service plan) of Family Code section 161.001(b)(1). The guardian ad litem agreed with the Department.

The trial court terminated Mother's parental rights based on findings that Mother had engaged in the conduct described in subsections (D), (E), (N), and (O) of Family Code section 161.001(b)(1) and based on the court's finding that terminating Mother's parental rights would be in Philip's best interest. The trial court terminated Father's parental rights under Family Code section 161.002 providing for the termination of the rights of an alleged biological father.

## II. ISSUES AND ANALYSIS

In her appellate brief, Mother concedes the sufficiency of the evidence to support the trial court's findings as to constructive abandonment under subsection (N) and that termination of Mother's parental rights is in Philip's best interest, but

---

[2] *See* Tex. Fam. Code Ann. § 107.031 (West, Westlaw through 2017 1st C.S.); *In re K.M.L.*, 443 S.W.3d 101, 106 n.2 (Tex. 2014).

Mother nonetheless asks this court to review the sufficiency of the evidence to support the trial court's findings under subsections (D) and (E) because of the collateral consequences of these findings. Mother relies on a line of cases in which this court has concluded that when asked to address findings under subsections (D) and (E), this court should do so even if a finding under another subsection supports the final termination order because of potential collateral consequences that a finding under subsection (D) or (E) might be used to support a finding under subsection (M) in a future action to terminate the appellant's parental rights as to another child.[3] *See In re S.J.N.*, No. 14-18-00529-CV, 2018 WL 6494256, at *6 (Tex. App.—Houston [14th Dist.] Dec. 11, 2018, pet. denied) (mem. op.). The parties have not cited, and research has not revealed, any case addressing whether this review of a (D) or (E) finding is available if the appellant did not challenge another finding under Family Code section 161.001(b)(1) and the trial court's best-interest-of-the-child finding. Thus, this case presents an issue of apparent first impression.

Mother contends the evidence is insufficient to support the termination of her parental rights under (D) and (E). In response, the Department argues that because Mother has conceded the (N) ground and the trial court's best-interest determination, a review of the (D) or (E) ground would result in an advisory

---

[3] The court may order termination of the parent-child relationship if the court finds by clear and convincing evidence:

   (1) that the parent has:

   . . . .

      (M) had his or her parent-child relationship terminated with respect to another child based on a finding that the parent's conduct was in violation of Paragraph (D) or (E) or substantially equivalent provisions of the law of another state[.]

Tex. Fam. Code Ann. § 161.001(b)(1) (West, Westlaw through 2017 1st C.S.).

opinion. *See Valley Baptist Med. Ctr. v. Gonzalez*, 33 S.W.3d 821, 822 (Tex. 2000). Under the Supreme Court of Texas's interpretation of the Texas Constitution, Texas courts have no jurisdiction to issue advisory opinions. *See, e.g.*, *Cadena Com. USA Corp. v. Texas Alco. Bev. Comm'n*, 518 S.W.3d 318, 336 (Tex. 2017) (citing Tex. Const. art. IV, §§ 1, 22); *Valley Baptist Med. Ctr. v. Gonzalez*, 33 S.W.3d at 822 (citing Tex. Const. art. II, § 1); *Morrow v. Corbin*, 62 S.W.2d 641, 645–46 (Tex. 1933) (Tex. Const. art. V, §§ 3, 6). Alternatively, the Department argues that the record contains sufficient evidence to support the trial court's findings on the (D) and (E) grounds.

A.      **The Effect of the Supreme Court of Texas's Opinion in *In re N.G.***

On the heels of oral argument in today's case, the Supreme Court of Texas issued its opinion in *In re N.G.* *See* No. 18-0508, —S.W.3d—,—, 2019 WL 2147263, at *4 (Tex. May 17, 2019) (per curiam). The *N.G.* court applied the factors the Supreme Court of the United States used in *Santosky v. Kramer* and the Supreme Court of Texas used in *In re J.F.C.* *See Santosky v. Kramer*, 455 U.S. 745, 759–68, 102 S. Ct. 1388, 1398–1402, 71 L. Ed. 2d 599 (1982); *In re J.F.C.*, 96 S.W.3d 256, 273–274 (Tex. 2002); *In re N.G.*, 2019 WL 2147263, at *3–4. Balancing these factors, and considering that the risk of error would mean significant consequences for future parental rights, the *N.G.* court concluded that a parent's fundamental liberty interest in the right to parent outweighs the state's interest in deciding only what is necessary for final disposition of the appeal. *In re N.G.*, 2019 WL 2147263, at *4. Therefore, the *N.G.* court decided that allowing (D) and (E) findings to go unreviewed on appeal when the parent has presented the issue to the appellate court violates the parent's due-process and due-course-of-law rights. *See id.*

The *N.G.* court held that the court of appeals violated the mother's due-process and due-course-of-law rights by failing to review the trial court's findings

under (D) and (E) when the appellant/mother had presented the issue. *Id.* The *N.G.* court also concluded that due process and due course of law require an appellate court to detail its analysis as to why a parent's challenge to a finding under (D) or (E) lacks merit. *See id.* at *3–4. In another case the high court decided on the same day the court characterized the *N.G.* opinion as standing for the proposition that "due process requires an appellate court to review and detail its analysis as to termination of parental rights under [(D) or (E)] when challenged on appeal." *In re Z.M.M.*, No. 18-0734, —S.W.3d—,—, 2019 WL 2147266, at *2 (Tex. May 17, 2019) (per curiam).

In *In re N.G.* the trial court terminated the mother's rights based on its findings under subsections (D), (E), and (O) and its best-interest finding. *See In re N.G.*, 2019 WL 2147263, at *1. The mother appealed and challenged each of these findings, unlike Mother in today's case, who does not challenge the (N) finding or the best-interest finding. *See id.* The court of appeals in *In re N.G.* failed to address the findings under (D) or (E) because the court of appeals rejected the mother's challenge to the (O) and best-interest findings. *See id.* The court of appeals did not address the various court-of-appeals cases requiring review of findings under (D) and (E) on nonconstitutional grounds, nor did the court of appeals address whether constitutional due process or due course of law requires this review. *See In re N.G.*, No. 05-17-01255-CV, 2018 WL 1835697, at *4 (Tex. App.—Dallas Apr. 18, 2018) (mem. op.), *rev'd*, 2019 WL 2147263, at *6 (Tex. May 17, 2019). It appears that the appellant/mother did not raise either of these points in the court of appeals. *See In re N.G.*, 2019 WL 2147263, at *1; *In re N.G.*, 2018 WL 1835697, at *4. In *In re N.G.* the supreme court did not address whether the court of appeals was required to review the sufficiency of the evidence to support the trial court's findings under (D) and (E) based on nonconstitutional

7

grounds. *See In re N.G.*, 2019 WL 2147263, at *1–4. The mother in *In re N.G.* argued in the supreme court that the Fourteenth Amendment's Due Process Clause and the Texas Constitution's Due Course of Law provision required the court of appeals to review the trial court's findings under (D) and (E). *See id.* at *2. In today's case, Mother has not asserted these constitutional arguments.

Because of these differences between today's case and *In re N.G.*, today's case does not fall within the scope of the *In re N.G.* court's holding. *See id.* at *1–4. Nonetheless, the *N.G.* court made deliberate statements for future guidance in the conduct of litigation. Without determining whether nonconstitutional law required review of the trial court's findings under (D) and (E), the *N.G.* court concluded that (1) allowing (D) and (E) findings to go unreviewed on appeal when the parent has presented the issue to the appellate court violates the parent's due-process and due-course-of-law rights and (2) due process and due course of law require an appellate court to detail its analysis as to why a parent's challenge to a finding under (D) or (E) lacks merit. *In re N.G.*, 2019 WL 2147263, at *3–4. Although today's case does not fall within the scope of the *N.G.* court's holding, consistency with the high court's recent pronouncements demands that, without first determining whether nonconstitutional law requires review of the trial court's (D) and (E) findings, we determine whether Mother's challenge to the (D) and (E) findings has merit and detail our analysis, even though another finding listed in the Final Order as a ground for termination provides a proper basis for the predicate act required under section 161.001(b)(1) and even though Mother does not challenge the trial court's best-interest-of-the-child finding. *See In re N.G.*, 2019 WL 2147263, at *3–4.

B. **The Advisory-Opinion Argument**

The Department argues that because Mother has conceded one predicate ground and the trial court's best-interest determination, any review of the (D) or

(E) grounds would result in an advisory opinion. The parties' arguments also raise the issue as to whether an appellate remedy exists if the evidence is insufficient to support the (D) and (E) findings, given that this court must affirm the termination of Mother's parental rights because she does not challenge the (N) or the best-interest finding. Neither the *N.G.* court nor the *Z.M.M.* court addressed these issues. *See In re N.G.*, 2019 WL 2147263, at *1–4; *In re Z.M.M.*, 2019 WL 2147266, at *1–2. We must do so to dispose of today's appeal.

A trial court generally must file findings of fact separately rather than recite them in the trial court's judgment. *See* Tex. R. Civ. P. 299a; *In re A.A.M.*, No. 14-05-00740-CV, 2007 WL 1558701, at *3, n.3 (Tex. App.—Houston [14th Dist.] May 31, 2007, no pet.) (mem. op.). But, Texas Rule of Civil Procedure 306, entitled "Recitation of Judgment," requires that the trial court state in its final termination order the specific grounds for termination. *See* Tex. R. Civ. P. 306. In today's case, the trial court recited in its Final Order that the grounds for termination were the trial court's findings by clear and convincing evidence that Mother engaged in the conduct described in subsections (D), (E), (N), and (O) of section 161.001(b)(1) and that termination of Mother's parental rights was in Philip's best interest. *See* Tex. Fam. Code § 161.001(b); Tex. R. Civ. P. 306. Because trial courts must recite the specific grounds for termination in their final termination orders, parties properly may assert appellate complaints against these grounds, and an appellate court has the power to grant appropriate appellate relief if, for example, the appellate court concludes that the trial evidence is legally insufficient to support a finding that was a ground for termination of the appellant's parental rights.[4] *See* Tex. Fam. Code § 161.001(b); Tex. R. Civ. P.

---

[4] If the trial evidence is legally insufficient to support all of the findings under section 161.001(b)(1) or the best-interest finding, the appellate court could reverse the final termination order and render judgment denying termination. Tex. R. App. P. 43.2(c). If the trial evidence is

306; *In re A.A.M.*, 2007 WL 1558701, at *3, n.3; *In re C.M.C.*, 554 S.W.3d 164, 173 (Tex. App.—Beaumont 2018, no pet.). Under this reasoning, in her second issue, Mother challenges part of the Final Order — the findings under (D) and (E). Because this court has the power to delete these grounds from the trial court's Final Order, the issue of whether the evidence suffices to support these findings is not moot but ripe for resolution. Likewise, an opinion addressing this issue would not be an advisory opinion.

### C. The Effectiveness of the Available Appellate Remedies in a Future Termination Case Based on Subsection (M)

In its opinion in *In re N.G.* the Supreme Court of Texas necessarily concluded that courts of appeals have an appellate remedy if the trial court reversibly erred in making findings under subsections (D) and (E) which became specific grounds for termination and that this remedy would prevent these findings from being used under subsection (M) in a future termination proceeding. *See In re N.G.*, 2019 WL 2147263, at *3–4. But, the high court did not explain why this is so. One rationale finds roots in statutory construction.

The Department may prove a predicate act under subsection (M) by showing that "the parent has . . . had his or her parent-child relationship terminated with respect to another child based on a finding that the parent's conduct was in violation of subsection (D) or (E) or substantially equivalent provisions of the law of another state." Tex. Fam. Code § 161.001(b)(1)(M). One reasonable

---

factually insufficient to support all of the findings under section 161.001(b)(1) or the best-interest finding, the court of appeals could reverse the final termination order and remand for a new trial. Tex. R. App. P. 43.2(d). If the trial evidence is legally insufficient to support the findings under (D) and (E) but is legally sufficient to support a finding under another subsection of section 161.001(b)(1) and the best-interest finding, the appellate court could either (1) modify the trial court's final order to delete the (D) and (E) findings and affirm it as modified or (2) reverse the trial court's final order in part and render the judgment that the trial court should have rendered. Tex. R. App. P. 43.2(b), (c).

interpretation of this provision is that the Department must prove that a trial court signed a final order terminating the parent's parent-child relationship as to another child based on a finding that the parent's conduct violated (1) subsection (D) or subsection (E) or (2) substantially equivalent provisions of the law of another state, without any requirement that the Department prove (1) the final termination order is final by appeal and (2) no court has deleted the finding or reversed or set aside the final order. *See In re A.F.G.*, No. 14-17-00440-CV, 2017 WL 5506026, at *6 (Tex. App.—Houston [14th Dist.] Nov. 16, 2017, pet. denied) (mem. op.); *In re A.C.*, 394 S.W.3d 633, 640–41 (Tex. App.—Houston [1st Dist.] 2012, no pet.). Another reasonable interpretation of subsection (M)'s text is that the Department must prove that a trial court signed a final order terminating the parent's parent-child relationship as to another child based on a finding that the parent's conduct (1) violated subsection (D) or subsection (E) or (2) substantially equivalent provisions of the law of another state, and also that (1) the final termination order is final by appeal and (2) no court has deleted the finding or reversed or set aside the final order.

In interpreting a statute, if one reasonable interpretation raises a serious doubt as to the constitutionality of the statute and another reasonable interpretation does not, we are to adopt the latter interpretation. *See Whitman v. Am. Trucking Assocs.*, 531 U.S. 457, 471, 121 S. Ct. 903, 911, 149 L. Ed. 2d 1 (2001); *FSLIC v. Glen Ridge I Condominiums, Ltd.*, 750 S.W.2d 757, 759 (Tex. 1988); *Trustees of Indep. Sch. Dist. of Cleburne v. Johnson*, 52 S.W.2d 71, 72 (Tex. 1932). Interpreting subsection (M) to allow the Department to prove a predicate act based on a termination finding as to another child when a court has deleted the finding or reversed the final order or when a court in a pending appeal might delete the finding or reverse the final order would raise a serious doubt as to the

11

constitutionality of subsection (M). Therefore, we interpret subsection (M) to require the Department to prove that a trial court had signed a final order terminating the parent's parent-child relationship as to another child based on a finding that the parent's conduct violated (1) subsection (D) or subsection (E) or (2) a substantially equivalent provisions of another state's law, and also that (1) the final termination order is final by appeal and (2) no court has deleted the finding or reversed or set aside the final order. *See Whitman*, 531 U.S. at 471, 121 S. Ct. at 911; *Glen Ridge I Condominiums, Ltd.*, 750 S.W.2d at 759; *Trustees of Indep. Sch. Dist. of Cleburne*, 52 S.W.2d at 72. This interpretation of subsection (M) differs from that of courts that have concluded that a certified copy of a prior final termination order as to another child based on (D) or (E) is sufficient evidence to support an (M) finding. *See In re A.F.G.*, 2017 WL 5506026, at *6; *In re A.C.*, 394 S.W.3d at 640–41. Under today's interpretation of subsection (M), if this court were to find reversible error because the evidence is legally insufficient to support the (D) and (E) findings in the Final Order and this court rendered judgment under Texas Rule of Appellate Procedure 43.2(b) or (c), our decision would have an impact on Mother's rights because it would prevent the Department from using the Final Order to prove a predicate act under subsection (M) in a future termination case as to another child of Mother.

The Texas Legislature has mandated that "[a]n appeal in a suit in which termination of the parent-child relationship is ordered shall be given precedence over other civil cases by the appellate courts, shall be accelerated, and shall follow the procedures for an accelerated appeal under the Texas Rules of Appellate Procedure." Tex. Fam. Code Ann. § 109.002(a–1) (West, Westlaw through 2017 1st C.S.). Appellate courts are to dispose of these appeals "with the least possible delay." Tex. Fam. Code Ann. § 263.405 (West, Westlaw through 2017 1st C.S.).

12

In most situations, remedies other than a direct appeal from the final termination order will not be available for a party complaining that the trial evidence is insufficient to support the trial court's (D) or (E) findings. Notwithstanding Texas Rule of Civil Procedure 329, the Texas Legislature requires that in most scenarios[5] one whose parental rights have been terminated may not assert a direct or collateral attack on the final termination order after the sixth month following the date the trial court signed the order. Tex. Fam. Code Ann. § 161.211(a),(b) (West, Westlaw through 2017 1st C.S.). A restricted appeal is available only if the one whose parental rights were terminated (1) did not participate—either in person or through counsel—in the hearing that resulted in the final order and (2) did not timely file a postjudgment motion or request for findings of fact and conclusions of law, or a notice of appeal within the time permitted by Texas Rule of Appellate Procedure 26.1(c). *See* Tex R. App. P. 30. Even if one seeks equitable-bill-of-review relief within six months of the final termination order, that relief is available only in limited circumstances. *See Maree v. Zuniga*, No. 14-17-00210-CV, —S.W.3d—, —, 2019 WL 2000464, at *3–7 (Tex. App.—Houston [14th Dist.] May 7, 2019, no pet. h.).

A direct appeal from the final termination order under Family Code section 109.002(a-1) likely presents the only opportunity for review of the trial court's findings under subsections (D) and (E). *See In re N.G.*, 2019 WL 2147263, at *3. In addition, if a party does not challenge these findings and waits to see if the Department seeks to use these findings against the party in a future termination

---

[5] This restriction applies to a person whose parental rights have been terminated if (1) the person was personally served with citation, (2) the person was served by citation by publication, (3) the person executed an affidavit of relinquishment of parental rights, (4) the person executed an affidavit of waiver of interest in a child, or (5) the person's rights have been terminated under Family Code section 161.002(b). Tex. Fam. Code Ann. § 161.211(a),(b) (West, Westlaw through 2017 1st C.S.).

13

case as to another child, no remedy likely will be available because, in most scenarios, one whose parental rights have been terminated may not assert a direct or collateral attack against the final termination order more than six months after the date on which the trial court signed the order. Tex. Fam. Code Ann. § 161.211(a),(b). In those cases, once that period expires, Texas statutes do not allow a party to challenge the (D) and (E) findings in the final order in the future if the Department seeks to terminate parental rights as to another child under subsection (M).

In this appeal, Mother asks this court to review the sufficiency of the evidence to support the trial court's findings under (D) and (E). If Mother were to succeed in this challenge, this court could modify the trial court's Final Order by deleting the grounds for termination based on the (D) and (E) findings, and affirm the Final Order as modified. *See In re C.M.C.*, 554 S.W.3d at 173; Tex. R. App. P. 43.2(b). This appellate remedy would preclude the Department from proceeding under subsection (M) in a future case seeking termination of Mother's parental rights as to another child.

## D. Review of the Subsection (E) Finding

*Standards of Review*

Due to the severity and permanency of terminating the parental relationship, clear and convincing evidence must support such an order. *See* Tex. Fam. Code Ann. § 161.001; *In re J.F.C.*, 96 S.W.3d at 265–66. "Clear and convincing evidence" means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007; *In re J.F.C.*, 96 S.W.3d at 264. This heightened burden of proof results in a "correspondingly searching standard of appellate review." *In re A.C.*, 560 S.W.3d 624, 630 (Tex. 2018); *see In re*

14

*C.M.C.*, 273 S.W.3d 862, 873 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

In reviewing the legal sufficiency of the evidence in a parental-termination case, we must consider all evidence in the light most favorable to the finding to determine whether a reasonable factfinder could have formed a firm belief or conviction that its finding was true. *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). The factfinder is the sole arbiter of the credibility and demeanor of each witness. *Id*. at 346. We assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and we disregard all evidence that a reasonable factfinder could have disbelieved. *Id*. at 344. Yet, this does not mean that we must disregard all evidence that does not support the finding. *Id*. Because of the heightened standard, we also must be mindful of any undisputed evidence contrary to the finding and consider that evidence in our analysis. *Id*. The evidence is legally insufficient to support the challenged finding if, after conducting this review of the record evidence, we determine that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true. *Id*. at 344–45.

In reviewing the factual sufficiency of the evidence under the clear-and-convincing standard, we consider and weigh disputed evidence contrary to the finding against all the evidence favoring the finding. *In re A.C.*, 560 S.W.3d at 631; *see In re J.O.A.*, 283 S.W.3d at 345. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *In re J.O.A.*, 283 S.W.3d at 345. We give due deference to the factfinder's findings and we cannot substitute our own judgment for that of the factfinder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). And, in making this determination, we must

undertake "an exacting review of the entire record with a healthy regard for the constitutional interests at stake." *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (quoting *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002)) (internal quotations omitted). Nonetheless, our review must not be so rigorous that the only factfindings that could withstand review are those established beyond a reasonable doubt. *In re H.R.M.*, 209 S.W.3d at 108.

*Sufficiency of the Evidence Supporting the Subsection (E) Finding*

In her second issue, Mother asserts that the evidence is legally and factually insufficient to support termination under (D) and (E). We begin by addressing Mother's arguments as to the (E) finding, mindful of the requirement that Mother's appeal be meaningful and the *N.G.* court's directive that we detail our analysis[6] of the sufficiency of the evidence supporting an (E) finding. *See In re N.G.*, 2019 WL 2147263, at *3–4.

By making the (E) finding, the trial court found that Mother engaged in conduct or knowingly placed Philip with persons who engaged in conduct which endangered Philip's physical or emotional well-being. Tex. Fam. Code Ann. §§ 161.001(b)(1)(E). A finding of endangerment under (E) requires evidence that the endangerment resulted from the parent's conduct, including acts, omissions, or failures to act. *In re S.R.*, 452 S.W.3d 351, 361 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). Termination under (E) must be based on more than a single act or omission; the statute requires a voluntary, deliberate, and conscious course of conduct by the parent. *Id*. A court properly may consider actions and inactions

---

[6] The *N.G.* court did not abrogate or disapprove of the decision in *In re A.B.*, 437 S.W.3d 498 (Tex. 2014), nor did the *N.G.* court conclude that due process and due course of law mandate that an appellate court detail all of the relevant evidence as to why a parent's challenge to a finding under (D) or (E) lacks merit. *See In re N.G.*, 2019 WL 2147263, at *3–4; *In re A.B.*, 437 S.W.3d at 502–06.

occurring both before and after a child's birth to establish a course of conduct. *In re A.L.H.*, 515 S.W.3d 60, 91 (Tex. App.—Houston [14th Dist.] 2017, pet. denied).

While endangerment often involves physical endangerment, the statute does not require that conduct be directed at a child or that the child actually suffer injury; rather, the specific danger to the child's well-being may be inferred from the parent's misconduct alone. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). A parent's conduct that subjects a child to a life of uncertainty and instability endangers the child's physical and emotional well-being. *In re F.E.N.*, 542 S.W.3d 752, 764 (Tex. App.—Houston [14th Dist.] 2018, no pet.).

Mother was living with Father in Oregon when she gave birth to Philip. Within four months, Father physically abused Mother while he was intoxicated. Mother informed a Department investigator that Father had been "stressed out" because the family was homeless and living in a facility for homeless families. After Father's domestic abuse, Mother fled to Texas with four-month old Philip. Mother moved in with her grandparents. That meant Mother would be residing in the same home as her older brother, who had sexually molested her as a child. Mother told investigators that her brother completely ignored them while she and Philip were living in the same home and that Philip was never left alone in the brother's company.

While Mother and Philip were living at Mother's grandparents' home, Mother engaged in self-harm. Suicidal ideations plagued Mother, and she may have attempted to stab herself. Mother had been prescribed medication to assuage the symptoms of her mental-health diagnoses, but failed to take advantage of these remedies. Mother admitted to a history of drug abuse. She told investigators that she had used cocaine, methamphetamine, marijuana, and ecstasy. Mother said she

stopped using drugs after she met Father because he gave her a reason to live. Mother indicated she was willing to take a drug test, but never followed up on her scheduled appointment.

At all times during the investigation, Philip was in good health, and he was current on his immunizations. Mother and Philip appeared to be well-bonded.

During the Department investigator's conversation with Mother, Mother denied attempting to stab herself in the stomach, because, she said, "that would be stupid." She did, however, admit that she had entertained thoughts of suicide because she felt overwhelmed. Mother told the investigator that she had never had thoughts of harming Philip, that she only wanted the best for him, and that she loves him. Mother further stated that she needed help and could not care for Philip at that time.

During the course of the investigation, Mother became emotional when speaking to the Department over the telephone about Philip. Yet, Mother told the Department's caseworker that she would not be returning to Houston without Father and that she was looking for a job in Oregon.

The trial court reasonably could have considered Mother's mental state as endangering Philip's well-being. *In re J.I.T.P.*, 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (considering mother's schizophrenia and resulting suicidal thoughts, hospitalizations, and violence). Mother allowed her mental-health issues to go unaddressed, so much so that she admitted to no longer being able to care for Philip. "When a parent's mental state allows [the parent] to engage in conduct that endangers the physical or emotional well-being of the child, that conduct has bearing on the advisability of terminating the parent's rights." *Id* (quoting *In re C.D.*, 664 S.W.2d 851, 853 (Tex. App.—Fort Worth 1984, no writ)).

18

Moreover, Mother continued to communicate with Father while he was incarcerated in Oregon. During that time Father threatened to end his relationship with Mother. Mother blames her self-destructive behavior on Father's threats to leave her. Despite the physical abuse and emotionally destabilizing communications with Father, Mother insisted on continuing her relationship with him and ultimately decided to leave Texas and move back to Oregon to be with Father and to leave Philip in the care of Casa de Esperanza.

Evidence of domestic violence may be considered as evidence of endangerment under subsection (E). *In re K-A.B.M.*, 551 S.W.3d 275, 286 (Tex. App.—El Paso 2018, no pet.). A parent's abusive or violent conduct can produce a home environment that endangers a child's well-being. *In re J.I.T.P.*, 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.). Domestic violence, want of self-control, and propensity for violence may be considered as evidence of endangerment. *Id.*; *see In re M.R.*, 243 S.W.3d 807, 819 (Tex. App.—Fort Worth 2007, no pet.) (considering the fact that mother "exposed her children to domestic violence," including incident where mother was "smacked" in front of child, as evidence of endangerment under subsection (E)); *see also Sylvia M. v. Dallas County Welfare Unit*, 771 S.W.2d 198, 204 (Tex. App.—Dallas 1989, no writ) (considering "volatile and chaotic" marriage altercation during pregnancy and mother's repeated reconciliation with abusive spouse). Violent conduct by a parent toward the other parent may produce an environment that endangers the physical or emotional well-being of a child. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.).

Mother's untreated mental-health issues gave way to behavior that presented specific danger to Philip's physical and emotional well-being. Mother's choice to continue her relationship with a man who had physically assaulted her and caused

19

her extreme emotional disturbance subjects Philip to a life of uncertainty and instability that further endangers his physical and emotional well-being.

Considering all the evidence in the light most favorable to the (E) finding, assuming the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, disregarding all evidence that a reasonable factfinder could have disbelieved, being mindful of any undisputed evidence contrary to the finding, and considering that evidence in our analysis, we conclude that a reasonable factfinder could form a firm belief or conviction that Mother engaged in conduct or knowingly placed Philip with persons who engaged in conduct that endangered Philip's physical or emotional well-being. *See* Tex. Fam. Code Ann. §§ 161.001(b)(1)(E); *In re J.I.T.P.* 99 S.W.3d at 845 (concluding that a mother's mental state in addition to domestic violence between the parents supported a finding of endangerment).

As noted above, in reviewing the factual sufficiency of the evidence we consider and weigh disputed evidence contrary to the finding against all the evidence favoring the finding. *In re A.C.*, 560 S.W.3d at 631. Evidence at trial showed that Mother acted protectively towards Philip by admitting she needed help and relinquishing his care to Casa de Esperanza. Mother also cried on the telephone when asking about Philip and steadfastly maintained that she loves him and wants the best for him. Additionally, Mother disputed the narrative that she attempted to stab herself in the stomach in front of Philip. Philip was in good health and current on his immunizations when he and Mother arrived at the hospital before the Department became involved. While this evidence may weigh against a finding under (E), substantial evidence weighs in favor of an (E) finding. That evidence includes proof of Mother's decision to move Philip into a home with someone who molested her as a child, Mother's failure to address her known

20

mental-health problems, Mother's continued interactions with Father when she knew encounters with him exacerbated her already precarious mental-health status, Mother's disputed self-harming behavior, and Mother's decision to remain in a relationship in which there was a history of domestic abuse.

Considering and weighing the disputed evidence contrary to the finding against all the evidence favoring the finding, giving due deference to the trial court's findings, and after an exacting review of the entire record with a healthy regard for the constitutional interests at stake, we conclude that in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is not so significant that a factfinder could not reasonably have formed a firm belief or conviction that Mother engaged in the conduct described in subsection (E). *See In re A.B.*, 437 S.W.3d at 503; *In re J.O.A.*, 283 S.W.3d at 345. Thus, the trial evidence stands factually sufficient to support the trial court's (E) finding.

Because we conclude the evidence is legally and factually sufficient to support the trial court's finding under section 161.001(b)(1)(E), we do not address Mother's arguments that the evidence is legally and factually insufficient to support the trial court's finding under subsection (D). *See In re T.M.T.*, No. 14-18-00442-CV, 2018 WL 6053667, at *11 (Tex. App.—Houston [14th Dist.] Nov. 20, 2018, no pet.) (mem. op.).

## III. CONCLUSION

We overrule Mother's second issue to the extent she asserts the evidence is legally and factually insufficient to support the subsection (E) finding, and we need not address the remainder of this issue in which she asserts the evidence is legally

21

and factually insufficient to support the subsection (D) finding.[7]

We affirm the trial court's Final Order.


/s/     Kem Thompson Frost
Chief Justice


Panel consists of Chief Justice Frost and Justices Spain and Poissant (Frost, C.J., concurring).

---

[7] Mother has requested on appeal that we review her challenge to the (D) and (E) findings even though Mother has not challenged the (N) and best-interest findings. Thus, in today's case, we do not address whether the *In re N.G.* opinion or the *In re Z.M.M.* opinion requires appellate courts to review (D) and (E) findings when the appellant does not ask the court to review these findings because of the collateral consequences and even if another finding provides a proper basis for the predicate act required under section 161.001(b)(1). Nor do we address whether a failure to challenge (D) and (E) findings on appeal results in a waiver of the review provided in *In re N.G.* or whether this review only can be affirmatively waived.