**Affirmed and Memorandum Opinion filed July 7, 2022.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-22-00170-CV

---

### A.N.W.S., Appellant

### V.

### TEXAS DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES, Appellee

---

**On Appeal from the 315th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2020-01267J**

---

## MEMORANDUM  OPINION

Mother appeals the trial court's final order terminating her parental rights as to her Son and Daughter, the Children. On appeal, Mother concedes that she did not complete her court-ordered service plan for reunification but challenges the sufficiency of the evidence in support of the trial court's endangerment and best interest findings. We affirm.

## *Background*

Mother admitted that she was driving with Children and a friend when she was pulled over and drugs were found in the car. Mother told a caseworker from the Department of Family and Protective Services that the car and drugs belonged to her friend. Mother was arrested and charged with child endangerment and felony possession of a controlled substance, so Children moved in with Father and paternal Grandmother.

The home where Children were staying did not have running water, and Father told the caseworker he was taking Children to a motel to bathe. The refrigerator also did not work. A caseworker testified at trial that the conditions were deplorable, the home was a condemned shack, and Children looked malnourished. Father and paternal Grandmother both tested positive for cocaine, marijuana, amphetamines, and methamphetamines. The caseworker also testified she believed Mother was aware of the conditions of the home and of Father's and paternal Grandmother's drug use. Mother testified that she was not aware of the conditions in the home where Children were staying, that she could not assess the conditions because she was in jail, and prior to being jailed, Children lived with her. After Father and paternal Grandmother tested positive for drug use, Children were placed with a paternal cousin.

The child endangerment charge against Mother was dropped as part of a plea bargain agreement in exchange for a guilty plea to the charge for possession of a controlled substance. Mother was released from jail. Mother and Father then picked up Children from the cousin's home.

Mother and Children moved in with maternal Grandmother. Mother agreed to participate in a safety plan and submit to drug testing. Her hair follicle test results were positive for methamphetamines. She left maternal Grandmother's home and

2

was later found with Children at Father's home. Mother stated she lived in Palacios with Children and they were merely visiting Father. Parents did not give the caseworker permission to interview Children.

Department filed a lawsuit for protection of Children, alleging five prior referrals to Department involving Parents and outlining their criminal history. The trial court signed an "Order for Required Participation" requiring Parents to participate in certain services and report for drug testing. Children were not removed from Mother and Father at that time. Mother did not appear for drug testing. Mother also left Children with relatives who reported they believed she was again taking drugs and her living arrangements were unstable. The trial court then signed an order appointing Department as Children's temporary managing conservator and requiring Mother and Father to comply with Department's service plan for reunification.

The court-ordered service plan for reunification also required Mother to submit to drug testing. Mother again did not comply. The trial court ordered Mother to submit to drug testing a third time, which she did not do. Before trial, Mother tested positive for marijuana from a hair sample. Her urine test was negative.

At the time of trial, Daughter was living with Foster Parents, and Son was in a therapeutic foster home for behavioral aggression. Son was diagnosed with ADHD and adjustment disorder. Son was improving, and Daughter was doing well. Son was too aggressive to be in the home with Daughter, but Department planned to place them together in the future if possible. Foster Parents were willing to adopt Daughter and to allow Son to come back as a foster child if he continued to improve. The trial court terminated Mother's parental rights, finding that termination of the parent-child relationship was in the best interest of Children.

### *Discussion*

3

Mother contends that the evidence is legally and factually insufficient to support the trial court's two predicate findings of endangerment. *See* Tex. Fam. Code § 161.001(b)(1)(D) (endangerment by environment) and (E) (endangerment by conduct). Mother concedes the sufficiency of the evidence in support of the trial court's predicate finding that she failed to comply with the court-ordered service plan for reunification. *See id.* § 161.001(b)(1)(O). Mother also argues that the evidence is legally and factually insufficient to support the trial court's finding that termination was in Children's best interests. *See id.* § 161.001(b)(2). Because Mother does not challenge the trial court's finding as to the service plan, the determination as to whether the trial court erred in terminating her parental rights hinges only on the challenged finding that termination is in Children's best interest. *In re P.W.*, 579 S.W.3d 713, 720-21 (Tex. App.—Houston [14th Dist.] 2019, no pet.). But even if we reject Mother's challenge to the best-interest finding, we have the power to grant an appropriate appellate remedy if we sustain Mother's challenge to one of the endangerment findings. *See id.* at 717.

To terminate the parent-child relationship, a trial court must make two findings. *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). The trial court must find that a predicate ground for termination has been satisfied, which requires proof by clear and convincing evidence that the parent has either committed a prohibited act or has failed to perform a required act. Tex. Fam. Code § 161.001(b)(1). After finding a predicate ground for termination, the trial court must determine whether there is clear and convincing evidence that termination is in the child's best interest. *Id.* § 161.001(b)(2).

Due to the severity and permanency of the termination of parental rights, the burden of proof is heightened to clear and convincing evidence. *See* Tex. Fam. Code § 161.001(b); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). "'Clear and convincing

4

evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code § 101.007; *accord In re J.F.C.*, 96 S.W.3d at 264. This heightened burden of proof results in a heightened standard of review. *In re S.R.*, 452 S.W.3d 351, 358 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). "But the constitutional and statutory requirement that parental rights cannot be terminated unless grounds for termination are established by clear and convincing evidence necessarily means that the ultimate burden of proof based on clear and convincing evidence remains with the party seeking to terminate the parental rights." *In re L.M.I.*, 119 S.W.3d 707, 720 (Tex. 2003) (Owen, J., concurring in part and dissenting in part).

In reviewing the legal sufficiency of the evidence in a termination case, we consider all the evidence in the light most favorable to the finding to determine whether a reasonable factfinder could have formed a firm belief or conviction that its finding was true. *See In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009); *In re J.F.C.*, 96 S.W.3d at 266. We assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and we disregard all contrary evidence a reasonable factfinder could have disbelieved. *In re J.O.A.*, 283 S.W.3d at 344; *In re J.F.C.*, 96 S.W.3d at 266.

In reviewing the factual sufficiency of the evidence, we consider and weigh all the evidence, including disputed or conflicting evidence. *See In re J.O.A.*, 283 S.W.3d at 345. Evidence is factually insufficient if in light of the entire record, the disputed evidence a reasonable factfinder could not have credited in favor of a finding is so significant that the factfinder could not have formed a firm belief or conviction that the finding was true. *In re J.F.C.*, 96 S.W.3d at 266. We give due deference to the factfinder's findings, and we cannot substitute our own judgment

for that of the factfinder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam). The factfinder is the sole arbiter when assessing the credibility and demeanor of witnesses. *Id.* at 109. We are not to "second-guess the trial court's resolution of a factual dispute by relying on evidence that is either disputed, or that the court could easily have rejected as not credible." *In re L.M.I.*, 119 S.W.3d at 712.

## I.    Endangerment Findings

Only one predicate finding under section 161.001(b)(1) is necessary to support a judgment of termination when there also is a finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003*); In re L.E.R.*, No. 14-21-00590-CV, 2022 WL 1088592, at \*8 (Tex. App.—Houston [14th Dist.] Apr. 12, 2022, no pet. h.). We must address the trial court's endangerment findings under section 161.001(b)(1)(D) or (E) when a parent has challenged the sufficiency of the evidence to support such findings. *In re N.G.*, 577 S.W.3d 230, 235 (Tex. 2019) (per curiam); *In re P.W.*, 579 S.W.3d at 720.

Termination of parental rights is warranted if the factfinder finds by clear and convincing evidence, in addition to the best-interest finding, that the parent has "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child" or "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." Tex. Fam. Code § 161.001(b)(1)(D), (E). "To endanger" means to expose a child to loss or injury or to jeopardize a child's emotional or physical health. *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996).

Subsections D and E differ principally with respect to the source of the danger to the child. Endangerment under subsection D focuses on evidence of the child's environment, including living conditions and the parent's conduct in the home. *See*

6

*In re L.E.R.*, 2022 WL 1088592, at *8–9. A child is considered endangered when the environment creates a potential for danger and the parent is aware of the danger yet consciously disregards it. *Id.* at *8. Under subsection E, the relevant inquiry is whether the endangerment of the child's physical and emotional wellbeing was the direct result of the parent's conduct, including acts, omissions, or failures to act. *In re S.R.*, 452 S.W.3d at 360.

**Endangerment by Environment**. Inappropriate, abusive, or unlawful conduct by a parent or other persons who live in the home can create an environment that endangers the physical or emotional wellbeing of a child. *In re L.E.R.*, 2022 WL 1088592, at *8. A single act or omission may be sufficient to support termination under subsection D. *Id.* at *9. In evaluating endangerment under subsection D, the court must consider the child's environment before the Department obtained custody. *Id.* Subsection D is not a basis for termination of parental rights if the parent was unaware of the endangering environment. *In re V.A.*, 598 S.W.3d 317, 329 (Tex. App.—Houston [14th Dist.] 2020, pet. denied). There must be clear and convincing evidence of endangerment as well as of the parent's awareness of the endangering environment. *Id.* Although the parent need not have certain knowledge that an actual injury is occurring, the parent must at least be aware of the potential for danger to the child in such an environment and must have disregarded that risk. *In re A.S.*, 261 S.W.3d 76, 83 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). Evidence of criminal conduct, convictions, imprisonment, and their effects on a parent's life and ability to parent may establish endangering conduct under subsection D or E. *In re S.R.*, 452 S.W.3d at 360-61. Subjecting children to the probability that they will be left alone because their parent is in jail endangers children's physical and emotional wellbeing. *See In re L.M.*, 572 S.W.3d 823, 834 & n.4 (Tex. App.—Houston [14th Dist.] 2019, no pet.). Imprisonment alone is not endangering conduct but is a fact

7

properly considered on the endangerment issue. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533-34 (Tex. 1987). As well, a parent's conduct that subjects a child to a life of uncertainty and instability endangers the child's physical and emotional wellbeing. *In re F.E.N.*, 542 S.W.3d 752, 764 (Tex. App.—Houston [14th Dist.] 2018, no pet.); *In re A.L.H.*, 515 S.W.3d 60, 91 (Tex. App.—Houston [14th Dist.] 2017, pet. denied).

Mother was in jail at the time Department received a referral about the conditions where Children were living with Father. Mother had been arrested for possessing illegal drugs in a car she was driving with Children present. Mother also pleaded guilty to the possession charge as part of a plea deal in which a charge for child endangerment was dropped. Although there is only evidence that Mother was jailed one time, Department also presented evidence that she had been arrested three other times in the five years leading up to her most recent arrest. A factfinder reasonably could find that this conduct subjected Children to a probability of being left alone. *See In re S.R.*, 452 S.W.3d at 360-61.

Children were living in deplorable conditions with Father without running water or electricity while Mother was in jail. Father had to take Children to a hotel to take showers, and there was no food in the home. A Department caseworker testified that Mother was aware of these conditions, as well as drug use by Father and his mother who lived in the house. But Mother testified at trial that she was not aware of these conditions and could not make any efforts to assess Children's home environment while she was in jail. Despite Mother's denial of her awareness of Children's living conditions, a factfinder could reasonably conclude that Mother's incarceration led to Children living in these conditions and to Mother's inability to insure Children were in safe living conditions.

Drug abuse is another form of criminal conduct that may jeopardize a child's

8

physical or emotional health and thus constitute endangering conduct under subsection D. *Id*. at 361. Not only was Mother arrested after driving with drugs and Children in the vehicle, but the trial court also admitted evidence from Department that Mother reportedly used and sold methamphetamines around Children. That evidence was not objected to and was presented in an affidavit outlining Mother's "Child Protective Service History." Department received a report in a prior investigation that "the mother uses methamphetamines every day and uses in the vehicle. The mother has been dealing drugs from the vehicle with the children present." Mother denied using or selling methamphetamines and agreed to go to a facility for drug testing. She went to the testing site but could not be tested because she did not have identification. That case was closed "as ruled out without legal intervention possible."

This evidence of Mother's actions, including exposing Children to illegal substances and the possibility of being left alone, considered along with the inability to assess Children's living conditions while incarcerated, supports the finding that Mother knowingly placed or knowingly allowed Children to remain in conditions or surroundings which endangered their physical or emotional wellbeing. Considered in the light most favorable to the trial court's finding, the evidence is legally sufficient to support the trial court's determination that termination of Mother's parental rights was justified under section 161.001(b)(1)(D). Further, in view of the entire record, we conclude the evidence to the contrary is not so significant as to prevent the trial court from forming a firm belief or conviction that termination was warranted under section 161.001(b)(1)(D). Accordingly, we conclude the evidence is legally and factually sufficient to support the subsection (D) finding.

**Endangerment by Conduct**. Unlike subsection D, termination under subsection E must be based on more than a single act or omission because the statute

requires the parent engage in a voluntary, deliberate, and conscious course of conduct. *In re S.R.*, 452 S.W.3d at 360. As a general rule, subjecting children to a life of uncertainty and instability endangers the children's physical and emotional wellbeing. *In re J.O.A.*, 283 S.W.3d at 345 n.4. Under subsection E, courts may consider conduct occurring both before and after Department removed Children from the home. *See In re S.R.*, 452 S.W.3d at 360.

Much of the evidence discussed as relevant to subsection D—imprisonment, criminal record, and drug use—is also relevant to our analysis of whether Mother engaged in conduct that endangered the physical or emotional wellbeing of Children under subsection E. *See, e.g.*, *In re J.O.A.*, 283 S.W.3d at 345 (explaining that a parent's drug use and its effect on his or her parenting may qualify as an endangering course of conduct); *In re A.A.C.*, No. 14-19-00560-CV, 2019 WL 6913327, at *6 (Tex. App.—Houston [14th Dist.] Dec. 19, 2019, no pet.) (mem. op.) (explaining that evidence of criminal conduct, convictions, imprisonment, and their effects on a parent's life and ability to parent, and routinely subjecting children to the probability that they will be left without their parent endangers children's physical and emotional wellbeing). As mentioned above, under subsection E, the trial court was additionally able to consider conduct occurring after Department removed the children from the home. *See In re S.R.*, 452 S.W.3d at 360.

A parent's drug abuse may be an endangering course of conduct under subsection (E) because it can negatively impact the parent's ability to parent in multiple ways, not only by exposing the child to the possibility that the parent may be imprisoned, but also because drugs can physically impair the capacity to parent. *In re J.B.*, No. 14-20-00766-CV, 2021 WL 1683942, at *5 (Tex. App.—Houston [14th Dist.] Apr. 29, 2021, pet. denied) (mem. op.); *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009,

pet. denied). We have held that a parent's decision to engage in illegal drug use during the pendency of a termination suit, when the parent is at risk of losing the child, may support a finding to a clear and convincing degree that the parent engaged in conduct that endangered the child's physical or emotional wellbeing. *In re J.B.*, 2021 WL 1683942, at *6. But we have also held that there must be a causal connection between a parent's drug use and any alleged endangerment. *In re L.C.L.*, 599 S.W.3d 79, 84 (Tex. App.—Houston [14th Dist.] 2020, pet. denied) (en banc).

In the *In re L.C.L* case, the sole basis for termination was that the mother "tested positive for drugs both initially and throughout the proceedings." *Id*. Here, there are a few more factors. Not only was Mother arrested after driving with drugs and Children in the vehicle, but she also pleaded guilty to the possession charge in exchange for the prosecution dropping the child endangerment charge. Mother additionally tested positive for methamphetamines after the Department referral and tested positive for marijuana after trial started. Mother left Children with relatives who reported they believed she was again taking drugs and her living arrangements were unstable. Moreover, Mother did not show up for two court-ordered drug tests. We have held that "a fact finder reasonably can infer that a parent's failure to submit to court-ordered drug tests indicates the parent is avoiding testing because they were using illegal drugs." *In re E.R.W.*, 528 S.W.3d 251, 265 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

This evidence, considered altogether in addition to the evidence supporting the endangerment finding under subsection D, would support a finding that Mother had a history of drug use and unstable living conditions that endangered the children and would continue to engage in such behavior. We conclude that under these circumstances, the factfinder could have formed a firm belief or conviction that its endangerment finding under subsection (E) was true. *E.g., In re J.B.*, 2021 WL

11

1683942, at *6; *In re J.O.A.*, 283 S.W.3d at 344. Considered in the light most favorable to the trial court's finding, the evidence is legally sufficient to support the trial court's determination that termination of Mother's parental rights was justified under section 161.001(b)(1)(E). Further, in view of the entire record, we conclude the evidence to the contrary is not so significant as to prevent the trial court from forming a firm belief or conviction that termination was warranted under section 161.001(b)(1)(E). Accordingly, we conclude the evidence is legally and factually sufficient to support the subsection (E) finding. We turn to the trial court's best interest finding.

## II.    Best Interest Finding

There is a strong presumption that the best interest of a child is served by keeping the child with a parent. *See In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). The party requesting termination bears the heavy burden of rebutting that presumption. *See In re D.R.A.*, 374 S.W.3d 528, 533 (Tex. App.—Houston [14th Dist.] 2012, no pet.). No specific set of facts is required to establish that termination is in the best interest of a child, but there are several nonexclusive factors that may guide the factfinder's best-interest determination. *See In re L.M.*, 572 S.W.3d at 837. These factors include: (1) the desires of the child; (2) the child's emotional and physical needs now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist those persons seeking custody in promoting the best interest of the child; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) any acts or omissions of the parent that may indicate the existing parent-child relationship is not appropriate; and (9) any excuse for the parent's acts or omissions. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *In re E.R.W.*, 528

S.W.3d at 266; *see also* Tex. Fam. Code § 263.307(b) (listing factors to consider in evaluating a parent's willingness and ability to provide the child with a safe environment).

### A. Children's Desires, Plans for Children by Individuals Seeking Custody, and Stability of Proposed Home or Placement

When there is no direct evidence of a child's desires, the factfinder may consider the children's relationship with their natural family and whether the children have bonded with their foster family. *See In re L.G.R.*, 498 S.W.3d 195, 205 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). Children did not testify at trial, but Daughter told a Department supervisor that she was happy living with Foster Parents. Son told the child advocate that he missed his parents but did not state that he wanted to live with them. Son had lived with several different people and wished to stay in the same home. He was also interested in living with Foster Parents. Additionally, the trial judge advised the parties that she "visited with the kids in chamber." In the absence of a record, we presume that the in camera interview supports the trial court's best-interest finding. *See, e.g., In re E.E.*, No. 14-19-00779-CV, 2020 WL 7073995, at *2 (Tex. App.—Houston [14th Dist.] Dec. 3, 2020, no pet.) (mem. op.) (involving best interest finding in custody dispute).

As to the plans for Children and stability of proposed home or placement, a child's need for permanence through the establishment of a "stable, permanent home" has been recognized as the paramount consideration in the best interest determination. *See In re K.C.*, 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.); *see also L.B. v. Tex. Dep't of Family & Protective Servs.*, No. 14-21-00552-CV, 2022 WL 906020, at *3 (Tex. App.—Houston [14th Dist.] Mar. 29, 2022, no pet. h.) (mem. op.). Therefore, evidence about the present and future placement of the child is relevant to the best interest determination. *See In re C.H.*, 89 S.W.3d 17,

13

28 (Tex. 2002). Foster Parents wish to adopt Daughter, which is also Department's goal. With regard to Son, at the time of trial, Department had the short-term goal of keeping him in a therapeutic foster home to address his aggression, but Department's goal was to place Children together in the future if possible. Foster Parents were willing to allow Son to come back as a foster child if he continued to improve.

**B. Present and Future Physical and Emotional Needs of and Danger to Children**

A parent's ability to provide a child with a safe environment is a primary consideration in determining the child's best interest. *In re K.T.E.*, No. 14-18-00897-CV, 2019 WL 1119756, at *7 (Tex. App.—Houston [14th Dist.] Mar. 12, 2019, pet. denied) (mem. op.). The factfinder may infer from past conduct endangering the child's wellbeing that similar conduct will recur if the child is returned to the parent. *Id.*

Son had special needs that required him to be in a therapeutic foster home to address his physical aggression. He was also seeing a psychiatrist "for medication management" and was in weekly therapy sessions. Department was working toward moving Son to a special treatment program and eventually into the foster home with Daughter. Both Mother and the Department caseworker believed Son's aggressive behavior was the result of Mother's and Father's behavior in raising him. The child advocate also testified that Daughter and Son "came into care with a lot of fear regarding their time with their parents and [Son] has a lot of behaviors that resemble behaviors he learned in his parents' home, as well as concerns of drug use and violence."

Moreover, Mother's drug use, criminal history, incarceration, and resulting absence from Children's lives shows a course of conduct from which the factfinder could have determined that Mother endangered Children's emotional and physical

14

wellbeing. *See id*. Department presented evidence of Mother's criminal history admitted without objection that when she was a minor, Mother "'beat up' her sibling causing the sibling's face to be black and blue," was arrested, placed on probation, and placed in a juvenile detention facility. Department also presented unobjected to evidence that Mother used and sold methamphetamines around Children. As discussed, Mother was also arrested for possessing illegal drugs in a car she was driving with Children present and was in jail at the time of the Department referral. Mother pleaded guilty to the possession charge in exchange for a dismissal of the child endangerment charge. Additionally, Mother tested positive for methamphetamines after the Department referral and tested positive for marijuana after trial started. Mother further failed to comply with court-ordered drug testing.

Mother further demonstrated an inability to care for Children. Before Children were taken into Department custody, Mother had left them with relatives who believed Mother was doing drugs and lived in an unstable environment. Mother was living with her brother at the time of trial, but there was no evidence regarding whether she could stay with her brother long term or whether that home would be a stable placement for Children. Mother testified that she had a job but did not provide proof of any income. Mother also testified that she was saving for a home but did not articulate a plan for doing so. Mother also failed to comply with the court-ordered service plan for reunification in several respects. She did not provide proof of stable housing or income, did not provide proof of involvement in Narcotics Anonymous and admitted she did not get a sponsor as required, was unsuccessfully discharged from therapy for noncompliance, and did not take all required drug tests, parenting classes, or a psychosocial assessment.

### C. Acts or Omissions of Parent and Any Excuses

Mother concedes that she did not complete the service plan. The only excuse she offers is that "she would have completed her services but for communication issues that she tried to resolve." According to Mother, she lost her phone and could not contact her therapist and did not know who her caseworker was. She testified that she was not using drugs at the time of trial but did not offer an excuse for the positive or missed drug tests. She also testified that she did not have a Narcotics Anonymous sponsor because she was attending virtual meetings. According to Mother, she could provide a safe home for Children, and they had a safe home when they were with her.

### D. Balancing the Factors

The best interest factors weigh in favor of the trial court's finding that termination of Mother's parental rights was in the best interest of Children. The record supports the following findings: (1) the Department has plans for Daughter to be adopted into a stable and permanent home and for Son to stay in a therapeutic foster home with the eventual goal to place Children together; (2) the present physical and emotional needs of Children were being met and would continue to be met; (3) Children would be endangered in Mother's care; and (4) Mother offered few excuses for her acts and omissions. Viewing the evidence in the light most favorable to the judgment for legal sufficiency and weighing the evidence equally for factual sufficiency, we conclude that a reasonable factfinder could have formed a firm belief or conviction that termination of Mother's parental rights was in Children's best interest.

### *Conclusion*

We affirm the trial court's final order of termination.


/s/    Frances Bourliot
        Justice


Panel consists of Justices Bourliot, Hassan, and Wilson.