**Affirmed and Memorandum Majority and Concurring Opinions filed February 8, 2022.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-21-00473-CV

---

## IN THE INTEREST OF T.N.R., A CHILD

---

**On Appeal from the 314th District Court
Harris County, Texas
Trial Court Cause No. 2018-03359J**

---

## MEMORANDUM MAJORITY OPINION

Appellant S.R. (Mother) appeals the trial court's final order terminating her parental rights to T.N.R. (the Child) and appointing the Department of Family and Protective Services as sole managing conservator of the Child. Mother contends that the evidence is legally and factually insufficient to support the trial court's predicate findings for termination, the evidence is factually insufficient to support the best-interest finding, and the trial court abused its discretion by not appointing Mother as a managing or possessory conservator of the Child. We affirm.

# I.  BACKGROUND

## A.  History with the Department and Removal

Mother has seven children.  The oldest was born in 2005.  The Child is the youngest and was born in April 2017.  The Department has been involved with Mother's children since 2008 when there were allegations of neglectful supervision by the parents.  One of Mother's children was hit by a car.

In late 2009, Mother's then-living children were taken into the Department's custody due to physical abuse and neglect.  The children and their clothing were dirty and smelled as if they were not bathed regularly.  One child had dried feces on both his legs down to his ankles and on his shoes.  Another child's hair was matted to her head.  After Mother completed services, the children were returned to her care in 2010.

In 2016, the Department again removed the children from the parents' care following a report of domestic violence against Mother by Father.  The Department sought and obtained sole managing conservatorship of the children.  The parents were named possessory conservators and were allowed only supervised visitation with the children or by agreement with the Department.

In early June 2018, Mother's two oldest children were returned to her home based on progress she had made in the case.  But later that month, a therapist and a caseworker each visited the home and found Father with the children.  The Department removed the Child and her siblings from the home.  The Child was removed on June 14, 2018, and she has been in the same foster placement since then.

The Department sought termination of Mother's and Father's parental rights to the Child. The final hearing commenced on May 23, 2019, and was continued on December 14, 2020, January 21, 2021, and August 9, 2021.

## B.    Drugs

Mother testified that she has never had a drug addition, but her "drug of choice was marijuana." She testified, "I never used cocaine a day in my life." Nonetheless, Mother testified that she attended alcoholic anonymous, cocaine anonymous, and narcotic anonymous every day, Monday through Friday, "Because that's something that I like to do, and it's kind of fun to realize what's going on with you." She denied admitting to a caseworker that she had used cocaine.

The Department adduced evidence that Mother admitted to a caseworker that she used cocaine with Father since the age of twenty-two, or 2008. The court admitted evidence that Mother took monthly drug tests, and she tested positive for cocaine in December 2016, July 2018, October 2018, March 2019, July 2020, and May 2021. Mother denied testing positive for cocaine. She testified that she had her own drug tests performed: "Every time they drug test me, I go pay for my owns at the same place y'all take me to." She attributed her positive drug tests to eating poppy seeds: "I love Burger King and you can be tested positive eating them poppy seeds."

A caseworker testified that Mother has had periods of testing negative for drugs, but Mother had tested positive for cocaine at least five times between June 2018 and January 2021. The caseworker acknowledged that on at least one occasion Mother tested positive for cocaine and then negative a few weeks later.

3

In June 2018, during the home visit that prompted the Child's removal, a caseworker observed marijuana on a kitchen counter not far from where the children were sitting.

## C.    Violence

The Department had made "reason to believe" findings regarding Father's physical abuse of the children in 2009 when it was reported that Father beat the children with his fist regularly and one child had been injured after Father dragged her.  The Department had made multiple "reason to believe" findings regarding Father's sexual abuse of children who were not Mother's children.  One of those children disclosed that Father "touched her inappropriately."  Another child disclosed that Father "asked him for oral sex" and "touched him inappropriately." Several of Mother's children were in therapy for "sexual acting-out behavior."

Mother testified that she was not aware that Father sexually abused any children "because he never sexually abused [her] children; and he never been charged for it."  She explained, "I don't know nothing about that.  That's another child.  That wasn't none of my children."  She testified later, however, that she was aware since 2016 that there had been allegations of sexual abuse against Father.  A caseworker testified that Mother told the caseworker that Father was a "sexual offender."

Mother testified that the first and last time Father assaulted her physically was in 2011.  She later testified that Father also assaulted her in 2015.  The Department adduced evidence that Father had been charged with assaulting Mother and interfering with an emergency call in 2011, but the charges were dismissed. He was convicted of a 2015 assault against Mother.

In 2016, Mother signed a safety plan stating that Father would move out of the home and not have contact with the children. Mother testified that in 2016 "they told me he had to leave in order for the kids to stay" due to "abuse and domestic violence." Mother testified that she told the Department throughout the 2016 case that she did not have any relationship with Father. Yet, Mother and Father conceived the Child, who was born in April 2017.

A caseworker testified by affidavit that she spoke with Mother on numerous occasions, including on June 9, 2018, about Father's whereabouts, and Mother "continually reported that she had no contact with him and had no idea where he was." Mother denied telling a caseworker that she did not have contact with Father in 2018.

On June 11, 2018, when a therapist for several of the children and a caseworker visited Mother's home, they found Father in the home.[1] It appeared to the therapist as if Father had spent the night at the house. Father told the caseworker that he knew he should not have been there, but he "wanted to help [Mother] out." When the therapist visited the home, Mother and Father were there together. When the caseworker visited the home, Father was alone with the children. A caseworker testified by affidavit that Mother initially denied knowing that Father was at the home but then "changed her story," stating that he was there to supervise the children. Mother testified that Father was found "in my house with the children." She testified that Father was taking the children to a babysitter who did not have a vehicle. Mother testified that she did not become aware until after the children were removed from her care in 2018 that Father was not supposed to be around her children.

---

[1] At trial, the therapist recalled there was a man in the home but could not recall if the man was Father; the therapist "suspected it was probably" Father. Mother testified that the therapist found Father in the home with the children.

Mother denied that Father threatened or assaulted her in June 2018. But the trial court admitted into evidence Mother's affidavit in support of a protective order that she signed on June 27, 2018, after the Child's removal on June 14, 2018. In the affidavit, Mother described an incident on June 9 when Father entered her home and said he "wanted to see our children even though there's a pending CPS case due to [Father's] violent behavior towards me." She described an incident on June 13 when Father entered her home through a window, pushed her, grabbed her, and jerked her repeatedly. She described an incident on June 22 when Father threw a can of beer at Mother's ankle and cut her. She testified further:

> He has assaulted me numerous times during our relationship. He has pushed me, pulled my hair, scratched me, hit me with his hand, threatened me with a knife, stalked me, choked me, thrown objects at me, threatened to hurt and to kill me, threatened to take our children from me, and being [sic] violent with me in front of my children.

## D.  Service Plan

A caseworker testified that Mother had completed all of her services in this case and in the two prior cases with the Department. But the caseworker was concerned because Mother continued to test positive for cocaine after completing substance abuse treatment.

## E.  Visits, Placement, and Plans

The caseworker testified that Mother had weekly visits with the Child for at least a year. The caseworker and child advocate each testified that Mother's visits with the Child have been appropriate. The advocate testified that Mother and the Child seemed bonded to each other. The caseworker testified that the Child refers to Mother as "mama."

Since the Child was removed from Mother in June 2018, the Child has lived with a foster family in an adoptive placement. The caseworker testified that the

6

Child has no specialized needs and is developmentally on target. The caseworker and child advocate testified similarly that the Child has a good relationship with the foster parents, and she is well-adjusted to that environment and taken care of. The foster parents read to the Child, and she participates in educational activities and travel. She is bonded with them and a foster brother. The Child calls her foster parents "mother" and "father." The foster parents have supported the Child's visits with her biological siblings, and the foster parents would continue to encourage those relationships. The foster parents want to adopt the Child, which the Department supports.

The caseworker testified that the children had also been in contact with Father. The children said Mother gave them Father's contact information.

## F. Termination

Following the trial, the court signed a decree terminating Mother's and Father's rights. The court found, among other statutory bases for termination, that Mother engaged in conduct or knowingly placed the Child with persons who engaged in conduct which endangers the physical or emotional well-being of the Child pursuant to Section 161.001(b)(1)(E) of the Family Code. The court found that termination was in the Child's best interest. The court appointed the Department as the sole managing conservator of the Child. Mother appealed; Father did not.

## II. STANDARD OF REVIEW

A court may terminate the parent-child relationship if the court finds by clear and convincing evidence that (1) the parent has engaged in at least one statutory predicate act and (2) termination is in the best interest of the child. *See In re N.G.*, 577 S.W.3d 230, 230 (Tex. 2019); *In re L.C.L.*, 599 S.W.3d 79, 83 (Tex.

App.—Houston [14th Dist.] 2020) (en banc), *pet denied*, 629 S.W.3d 909 (Tex. 2021); *see also* Tex. Fam. Code § 161.001(b).

Termination of the parent-child relationship is a drastic remedy and is of such weight and gravity that due process requires the state to justify termination by clear and convincing evidence. *In re C.H.*, 89 S.W.3d 17, 23 (Tex. 2002); *see also In re L.G.R.*, 498 S.W.3d 195, 201 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). Clear and convincing evidence is the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. Tex. Fam. Code § 101.007. This heightened burden of proof results in a heightened standard of review when evaluating the sufficiency of the evidence. *In re L.G.R.*, 498 S.W.3d at 202.

Under a legal sufficiency review, we look at all the evidence in the light most favorable to the finding to determine whether a reasonable factfinder could have formed a firm belief or conviction that the finding was true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Id.* We disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible, but we do not disregard undisputed facts. *Id.*

Evidence is factually insufficient if, in light of the entire record, "the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction." *Id.* We assume that the factfinder resolved disputed evidence in favor of its findings if a reasonable factfinder could do so, but we do not disregard disputed evidence. *See In re Commitment of Stoddard*, 619 S.W.3d 665, 674 (Tex. 2020).

8

### III. SECTION 161.001(B)(1)(E) PREDICATE FINDING

In her first four issues, Mother challenges the sufficiency of the evidence to support the trial court's four predicate findings. Because sufficient evidence is needed for only one predicate finding to affirm the trial court's judgment, and the Section 161.001(b)(1)(E) finding is dispositive, we address it first. *See In re P.W.*, 579 S.W.3d 713, 728 (Tex. App.—Houston [14th Dist.] 2019, no pet.); *In re J.J.W.*, No. 14-18-00985-CV, 2019 WL 1827591, at *8 (Tex. App.—Houston [14th Dist.] Apr. 25, 2019, pet. denied) (mem. op.).

Under subsection (E), the relevant inquiry is whether endangerment of the child's physical and emotional well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *In re Z.J.B.*, No. 14-18-00759-CV, 2019 WL 347474, at *4 (Tex. App.—Houston [14th Dist.] Jan. 29, 2019, pet. denied) (mem. op.); *see also In re S.M.L.*, 171 S.W.3d 472, 477 (Tex. App.—Houston [14th Dist.] 2005, no pet.). A child is endangered when the environment creates a potential for danger of which the parent is aware but disregards. *In re S.M.L.*, 171 S.W.3d at 477. Termination under subsection (E) must be based on more than a single act or omission—the evidence must demonstrate a voluntary, deliberate, and conscious course of conduct by the parent. *In re C.A.B.*, 289 S.W.3d 874, 883 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

Endangering conduct under subsection (E) need not be directed at the child, nor must the child actually suffer injury. *In re J.F.-G.*, 627 S.W.3d 304, 312 (Tex. 2021). "Rather, 'endanger' means to expose to loss or injury; to jeopardize." *Id.* (quoting *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)). A parent may endanger her children by accepting endangering conduct of other people. *In re J.J.W.*, 2019 WL 1827591, at *7.

As here, a parent's abusing drugs and exposing a child to domestic violence can present an endangering course of conduct sufficient under subsection (E). *See, e.g., id.* at *6–7 (sufficient evidence under subsection (E) when mother had history of drug abuse and exposed children to domestic violence by failing to maintain separation from children's father who physically abused children). Although there is no evidence that Mother tested positive for cocaine between the time of the Child's birth and removal from Mother's care, the court heard evidence that Mother tested positive for cocaine while pregnant with the Child, tested positive shortly after the Child's removal, and continued to test positive throughout the pending case. The trial court heard evidence that Mother knew Father had a history of domestic violence and had been violent with her in front of her children, was a "sexual offender," and was not supposed to be around her children. Nonetheless, Mother continued to expose the Child to Father, including while unsupervised.[2]

Reviewing all the evidence in the light most favorable to the trial court's finding under subsection (E), a reasonable factfinder could have formed a firm belief or conviction as to the truth of the finding. *See id.* at *7. The trial court was free to disregard Mother's self-serving testimony. *Id.* Considering the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the endangerment finding is not so significant that the trial court could

---

[2] Appellant contends that there is no definitive statement in the record that the Child was present on the single day in June that Father was found alone with "the children" in Mother's home. The trial court, as fact finder, could have made the reasonable inference that the Child was one of "the children" present based on (1) the removal affidavit's reference to "the children" being in the home, while the affidavit used different language (i.e., "the boys") to refer to the two older children who had been returned to Mother's care; (2) undisputed evidence that the Child lived in Mother's home in June 2018; (3) Mother's statement to a caseworker that Father was in the home to supervise "the kids" while Mother was at work; (4) Mother's testimony that Father was in her home "with the children" and was "taking them to the babysitter"; and (5) Mother's testimony at trial that she was unaware Father was not supposed to be around her children.

not reasonably have formed a firm belief or conviction as to the truth of the finding. *Id.*

The evidence is legally and factually sufficient to support the trial court's finding under subsection (E). Mother's second issue is overruled, and we do not reach Mother's first, third, and fourth issues challenging the sufficiency of the evidence to support other predicate grounds for termination. *See In re P.W.*, 579 S.W.3d at 728; *In re J.J.W.*, 2019 WL 1827591, at \*8; *see also* Tex. R. App. P. 47.1.

## IV.  BEST-INTEREST FINDING

In her fifth issue, Mother contends that the evidence is factually insufficient to support a finding that termination of her parental rights was in the Child's best interest.

The purpose of the State's intervention in the parent-child relationship is to protect the best interest of the child, not to punish parents for their conduct. *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003). There is a strong presumption that the best interest of a child is served by preserving the parent-child relationship. *In re B.J.C.*, 495 S.W.3d 29, 35 (Tex. App.—Houston [14th Dist.] 2016, no pet.). But there is also a presumption that the permanent placement of a child in a safe environment is in a child's best interest. Tex. Fam. Code § 263.307(a); *see also In re B.J.C.*, 495 S.W.3d at 39 (noting that a child's need for permanence through the establishment of a stable, permanent home is the paramount consideration in a best-interest determination). The best-interest analysis is child-centered and focuses on the child's well-being, safety, and development. *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018).

In assessing whether the evidence is sufficient to prove that termination is in the best interest of a child, we may consider the non-exclusive factors discussed in *Holley v. Adams*, 544 S.W.2d 367, 371–72 (1976). *See In re E.C.R.*, 402 S.W.3d 239, 249 & n.9 (Tex. 2013). These factors include (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *Id.* (citing *Holley*, 544 S.W.2d at 371–72).

We may also consider the statutory factors in Section 263.307 of the Family Code, including (1) the child's age; (2) the frequency and nature of out-of-home placements; (3) any history of substance abuse by the child's family or others who have access to the child's home; (4) the willingness and ability of parents to accept counseling services and to cooperate with the state's supervision; and (5) whether the parent has provided the child and other children under the parent's care with a safe physical home environment and protection from repeated exposure to violence, even though the violence may not be directed at the child. *See In re A.R.M.*, No 14-13-01039-CV, 2014 WL 1390285, at *9 (Tex. App.—Houston [14th Dist.] Apr. 8, 2014, no pet.) (mem. op.) (citing Tex. Fam. Code § 263.307(b)).

## A. Child's Age, Desires, Needs, Placement, and Plan

When there is no direct evidence of the child's desires and the child is too young to express desires, the factfinder may consider that the child has bonded

with a foster family, is well cared for by them, and has spent minimal time with a parent. *See In re A.M.W.*, No. 14-20-00742-CV, 2021 WL 1567762, at *5, (Tex. App.—Houston [14th Dist.] Apr. 22, 2021, pet. denied) (mem. op.); *In re J.J.W.*, 2019 WL 1827591, at *8.

Mother attended weekly visits with the Child, and the visits were "appropriate." But, by the time of the final hearing, the Child had been living with her foster family for more time than with Mother. Although the Child referred to Mother as "mama," the Child was bonded with her foster family, including a foster brother, and the Child referred to her foster parents as "mother" and "father." The Child was in a safe environment, and the foster family was taking care of her needs. The foster family was willing and able to adopt the Child. *See In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002) ("Evidence about placement plans and adoption are, of course, relevant to best interest.").

These factors weigh in favor of the trial court's finding that termination was in the Child's best interest.

## B. Parent's Acts and Omissions, Excuses, Substance Abuse, and Domestic Violence

"Continued drug use not only may be considered as establishing an endangering course of conduct, but also that termination is in the [Child]'s best interest." *In re J.J.W.*, 2019 WL 1827591, at *9. "A parent's unwillingness to admit she has a substance abuse problem suggests she will continue to abuse drugs and therefore continue to endanger her children." *In re Z.Q.N.*, No. 14-17-00434-CV, 2019 WL 758377, at *8 (Tex. App.—Houston [14th Dist.] Feb. 21, 2019, pet. denied) (mem. op.).

Mother told a caseworker that she used cocaine. She tested positive for cocaine when she was pregnant with the Child, while the Child was in foster care,

and throughout the trial. She claimed to have never used cocaine a day in her life. She suggested that she tested positive for cocaine multiple times over the course of more than four years because she ate poppy seeds at Burger King. Although she suggested that the Department's drug tests were incorrect and that she had taken her own drug tests, she offered no evidence to dispute the validity of the Department's drug tests. Although Mother completed substance abuse courses and many of the services required by her service plan, the trial court could have found that Mother continued to use cocaine and that her unwillingness to admit her substance abuse problem weighed in favor of a finding that termination was in the Child's best interest. *See In re J.J.W.*, 2019 WL 1827591, at \*9; *In re Z.Q.N.*, 2019 WL 758377, at \*8, \*10.

Even more concerning than Mother's persistent drug use is her attachment to Father. The trial court heard evidence that Father had perpetrated physical and sexual violence against other children and had assaulted Mother on multiple occasions in front of the children. Yet, Mother continued to associate with Father and gave him unsupervised access to the Child. She testified that she was unaware Father was not supposed to be around the Child. But when initially confronted with information about Father being in her home with the Child, Mother denied he was there, then changed her story. And the trial court heard evidence that Mother repeatedly told the Department around this time frame that Mother had no contact with Father. From these deceptions and Mother's contradictory testimony at trial, the court could have discounted evidence that Mother had obtained a protective order, inferred that Mother was unwilling to accept the seriousness of Father's violence in endangering the Child's physical and emotional well-being, and inferred that Mother was unwilling to effect positive change for the Child's safety. *See In re J.J.W.*, 2019 WL 1827591, at \*9–10 (sufficient evidence to support best-

14

interest finding, considering the mother's drug use, failure to protect children from the father, and her continued contact with the father despite his domestic violence against the mother); *see also In re T.E.C.*, No. 04-20-00351-CV, 2021 WL 41150, at *9 (Tex. App.—San Antonio Jan. 6, 2021, pet. denied) (mem. op.) (sufficient evidence to support best-interest finding, considering the mother's denial of any domestic violence and her refusal or inability to protect herself and the children from the father's violence, along with her failure to make sufficient changes in her own behavior).

These factors weigh in favor of the trial court's finding that termination was in the Child's best interest

## C.    Sufficient Evidence

Mother and the Child's bond is an important consideration, but it cannot override or outweigh evidence of danger to the Child. *In re A.J.A.R.*, No. 14-20-00084-CV, 2020 WL 4260343, at *6 (Tex. App.—Houston [14th Dist.] July 24, 2020, pet. denied) (mem. op.). Considering the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the best-interest finding is not so significant that the trial court could not reasonably have formed a firm belief or conviction as to the truth of the best-interest finding.

Mother's fifth issue is overruled.

## V.    CONSERVATOR

In her sixth issue, Mother contends that the trial court abused its discretion by appointing the Department as the Child's sole managing conservator and not appointing Mother as a managing or possessory conservator.

A trial court's conservatorship decision is subject to review for an abuse of discretion and may be reversed only if the decision is arbitrary and unreasonable.

*In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007). We consider whether the trial court had sufficient information upon which to exercise its discretion and whether the trial court erred in the application of its discretion. *In re M.P.*, 618 S.W.3d 88, 109 (Tex. App.—Houston [14th Dist.] 2020, pet. filed).

Appellant relies on the statutory presumptions, and cases applying the statutes, for parents to be appointed as managing and possessory conservators unless the trial court finds that the appointment would not be in a child's best interest. *See* Tex. Fam. Code §§ 151.131, 151.191. However, a trial court need not make any such finding following a termination of the parent's rights because the former parent is no longer a "parent" following the termination. *See Z.A.R. v. Tex. Dep't of Family and Protective Servs.*, No. 14-20-00511-CV, 2020 WL 7866800, at *15 (Tex. App.—Houston [14th Dist.] Dec. 31, 2020, pet. denied) (mem. op.).

Under Section 161.207(a) of the Family Code, following a termination of all parents' rights, a court "shall appoint a suitable, competent adult, the Department of Family and Protective Services, or a licensed child-placing agency as managing conservator of the child." Tex. Fam. Code § 161.207. The trial court's appointment of the Department as the sole managing conservator of a child is considered a "consequence of the termination" pursuant to Section 161.207. *In re V.A.*, 598 S.W.3d 317, 334 (Tex. App.—Houston [14th Dist.] 2020, pet. denied); *see also In re D.N.C.*, 252 S.W.3d 317, 319 (Tex. 2008) (per curiam).

Because the trial court terminated the parents' rights to the Child, and we affirm that decision, we cannot say the trial court's decision to appoint the Department—an agency statutorily identified as an eligible managing conservator—instead of Mother was arbitrary or unreasonable. *See id.*; *see also In re M.P.*, 618 S.W.3d at 109–10.

Mother's sixth issue is overruled.

## VI.  CONCLUSION

Having overruled Mother's issues necessary to the disposition of the appeal, we affirm the trial court's judgment.


/s/    Ken Wise
         Justice


Panel consists of Justices Wise, Spain, and Hassan.  (Spain, J., concurring).