

# IN THE
# TENTH COURT OF APPEALS

## No. 10-23-00374-CV

## IN THE INTEREST OF D.L. AND D.L., CHILDREN

### From the 77th District Court
### Limestone County, Texas
### Trial Court No. CPS-401-A

## MEMORANDUM OPINION

Following a bench trial, Mother appeals the order terminating her parental rights to D.L.-1 and D.L.-2, and Father appeals the order terminating his parental rights to D.L.-2.[1] Mother and Father both challenge the legal and factual sufficiency of the evidence to support their respective predicate grounds for termination and that termination was in the best interest of the children.

---

[1] The alleged biological father of D.L.-1 was dismissed in the trial court's final order because he was not served with citation and notice of the suit. His parental rights to D.L.-1, if any, were not terminated in this case.

**Background**

Mother has three biological children – D.J., D.L.-1, and D.L.-2. Mother's rights to D.J. were terminated in a separate proceeding. Regarding D.L.-1 and D.L.-2, based on another prior case with the Department of Family and Protective Services ("the Department"), W.M. was named the permanent managing conservator of the children and Mother was named their possessory conservator with supervised visitation. Less than a year after Mother was restricted to supervised visits, the Department learned that Mother was having extensive unsupervised contact with both children, including that the children were living with Mother and her boyfriend, "David," in an apartment where marijuana and drug paraphernalia were found by the Mexia Police Department. The Department filed its petition for conservatorship and termination of parental rights of Mother as to D.L.-1 and D.L.-2, and Father as to D.L.-2.

STANDARDS OF REVIEW

The standards of review for legal and factual sufficiency in cases involving the termination of parental rights are well established and will not be repeated here. *See In re J.O.A.*, 283 S.W.3d 336, 344-45 (Tex. 2009); *In re J.F.C.*, 96 S.W.3d 256, 264-68 (Tex. 2002); *see also In re J.F.-G.*, 612 S.W.3d 373, 381-82 (Tex. App.—Waco 2020), *aff'd*, 627 S.W.3d 304 (Tex. 2021). If multiple predicate violations are found by the factfinder, we will affirm based on any one finding because only one finding is necessary for termination of parental rights when there is also a finding that termination is in the child's best interest.

*In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *see In re J.S.S.*, 594 S.W.3d 493, 503 (Tex. App.—Waco 2019, pet. denied). But if one of the predicate grounds is based on endangerment under Subsection D or E, we are required to fully address that ground, if presented on appeal, based on future collateral consequences of such a finding. *See In re N.G.*, 577 S.W.3d 230, 234-37 (Tex. 2019). We give due deference to the factfinder's findings and must not substitute our judgment for that of the factfinder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). The factfinder is the sole judge of the credibility of the witness and the weight to give their testimony. *Jordan v. Dossey*, 325 S.W.3d 700, 713 (Tex. App.—Houston [1st Dist.] 2010, pet. denied).

## Predicate Grounds

Mother contends that her predicate findings under Texas Family Code Sections 161.001(b)(1)(D), 161.001(b)(1)(E), and 161.001(b)(1)(M) are not supported by legally and factually sufficient evidence. *See* TEX. FAM. CODE ANN. §§ 161.001(b)(1)(D), (b)(1)(E), (b)(1)(M). Father asserts that his predicate findings under Texas Family Code Sections 161.001(b)(1)(E) and 161.001(b)(1)(Q) are not supported by legally and factually sufficient evidence. *Id.* at §§ 161.001(b)(1)(E), (b)(1)(Q).

APPLICABLE LAW

Termination under both Subsections D and E require proof of endangerment, which means to expose the child to loss or injury, to jeopardize. *Tex. Dep't. of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). The endangerment analysis under

Subsection D focuses on evidence relating to the child's environment to determine if the environment was a source of endangerment to the child's physical or emotional well-being. *In re M.R.J.M.*, 280 S.W.3d 494, 502 (Tex. App.—Fort Worth 2009, no pet.). The relevant inquiry under Subsection E is whether sufficient evidence exists that the endangerment of the child's well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *In re E.M.*, 494 S.W.3d 209, 222 (Tex. App.—Waco 2015, pet. denied). The factfinder may consider conduct that occurred before and after the child's birth, in the child's presence and outside the child's presence, and before and after removal by the Department. *See J.O.A.*, 283 S.W.3d at 345. Additionally, a parent's past endangering conduct may create an inference that the parent's past conduct may recur and further jeopardize the child's present or future physical or emotional well-being. *J.S.S.*, 594 S.W.3d at 505.

MOTHER'S PREDICATE FINDINGS

Subsection D

A child is endangered when the environment creates a potential for danger which the parent is aware of but consciously disregards. *See Interest of S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). The trial court noted the harmful environment created by Mother and David's drug use in the home. Mother's chronic marijuana use is a primary reason for the Department's involvement in her life for the last several years. Mother admitted at trial that she kept her marijuana in the home and

would smoke it on the porch, though she stored it in a cabinet so the children were less likely to access it. Mother also admitted that she knew David would often use methamphetamine in their apartment, even while the children were home. She testified that David would be "cooped up" in the children's room smoking methamphetamine "mostly all night," though he would not use the drug directly in front of her or the children. Mother described how she learned to tell when David had been smoking methamphetamine in the apartment based on the presence of a towel under the children's bedroom door, open windows, and the "different smell" in the apartment. She explained that she would argue with David about finding his drug paraphernalia in the apartment and in her car. Based on Mother's testimony, she knowingly allowed her children to be exposed to methamphetamine for approximately two months before she moved them out of the apartment. Shortly after removal, D.L.-1 tested positive for methamphetamine, and Mother tested positive for methamphetamine and marijuana.

The trial court also expressed concern over persistent domestic violence in the home. Abusive conduct by a person who lives in the child's home or with whom the child is compelled to associate on a regular basis in the home is part of the "conditions and surroundings" of the child's home. *Jordan*, 325 S.W.3d at 721. A parent's failure to remove herself and her children from a physically violent or abusive relationship may support a finding of endangerment. *In re G.M.*, 649 S.W.3d 801, 809 (Tex. App.—El Paso 2022, no pet.). Evidence developed at trial established a cycle of abuse and reconciliation

between David and Mother. David received a four-year prison sentence for assaulting Mother in 2020, which she testified was based on David dragging her by her hair. After this assault, Mother reconciled with David. Mother testified that David was "very, very abusive" to her and would become "real violent" when he smoked methamphetamine. While Mother testified that David would not assault her in front of the children, she described a recent assault when the children were in her care, during which David kicked in a door and shoved her into a wall. The force of this contact caused Mother's body to create a sizeable hole in the wall, a photo of which was entered into evidence at the hearing. Even after Mother was awarded a monitored return from the trial court, with the stipulation that the children not be permitted to have contact with David, Mother violated the court order by taking the children to the jail to visit him. Mother testified that she had no plans to rekindle her relationship with David when he was released from custody. However, the trial court could reasonably disbelieve her testimony based on her past relationship pattern with David, as well as her testimony that she considered David to be the father of D.L.-1 and D.L.-2.

We find the evidence was legally and factually sufficient to support the trial court's finding that Mother placed or knowingly allowed the children to remain in conditions or surroundings that endangered the children's physical or emotional well-being. Because we find the evidence sufficient under Subsection D, we do not need to address

Subsections E and M. *See Interest of R.A.*, No. 10-21-00022-CV, 2021 Tex. App. LEXIS 4211, at *5 (Tex. App.—Waco May 27, 2021, no pet.) (mem. op.).

FATHER'S PREDICATE FINDINGS

Subsection E

Domestic violence, want of self-control, and propensity for violence may be considered as evidence of endangerment. *In re J.I.T.P.*, 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.). Evidence of domestic violence is relevant even if it is not directed at the child. *Interest of P.W.*, 579 S.W.3d 713, 727 (Tex. App.—Houston [14th Dist.] 2019, no pet.). At the final hearing, Father admitted to multiple arrests and convictions for assaultive conduct, including domestic violence. Father's most recent judgment of conviction for aggravated assault with a deadly weapon, for which he was still in prison at the time of trial, was admitted into evidence. He also discussed a separate aggravated assault with a deadly weapon conviction, which was based on a domestic violence incident against the mother of one of his other children. Father additionally admitted to having an assault on a public servant charge and two misdemeanor family violence charges in his criminal history.

While neither a conviction nor imprisonment, standing alone, will constitute engaging in conduct that endangers the emotional or physical well-being of a child, both are appropriate factors to weigh when considering endangerment. *Interest of J.F.-G.*, 627 S.W.3d at 312-13. A parent's criminal history—considering the nature of the crimes, the

duration of incarceration, and whether a pattern of escalating, repeated convictions exist—is relevant and can support a finding of endangerment. *Id.* at 312–315. Father, who was 35 years old at the time of the hearing, listed his criminal history as including theft, two misdemeanor assault family violence charges, criminal mischief, assault on a public servant, and two aggravated assault with a deadly weapon convictions. His aggravated assault with a deadly weapon convictions resulted in a ten-year prison sentence and a five-year prison sentence. Though the record was not developed as to the timing, status, and any related sentences associated with the other criminal charges, they show a pattern of repeated criminal behavior that endangers D.L.-2's emotional well-being by exposing him to a life of uncertainty and instability. *See Interest of M.T.R.*, 579 S.W.3d 548, 568 (Tex. App.—Houston [14th Dist.] 2019, no pet.). Further, when a parent is incarcerated, he is absent from the child's daily life and unable to provide support to the child, negatively impacting the child's living environment and emotional well-being. *M.R.J.M.*, 280 S.W.3d at 503. D.L.-2 was three years old at the time of the final hearing, but Father had never met the child. Father was incarcerated when D.L.-2 was born and had only seen him in pictures, and he was unable to provide financial support for D.L.-2 due to his incarceration.

Moreover, a parent endangers his child by accepting the endangering conduct of other people. *See Interest of L.W.*, No. 01-18-01025-CV, 2019 WL 1523124, at *20 (Tex. App.—Houston [1st Dist.] Apr. 9, 2019, pet. denied) (mem. op.). One parent's drug-

related endangerment may be imputed to the other parent who knowingly fails to protect the child from the drug-abusing parent's habits and behaviors. *See In re F.E.N.*, 542 S.W.3d 752, 764 (Tex. App.—Houston [14th Dist.] 2018, no pet.). Father told the Department that he knew Mother used methamphetamine, including while she was pregnant. Though Father denied making these statements to the Department at the final hearing, the trial court was free to disbelieve his testimony.

We find the evidence is legally and factually sufficient to support Father's termination of parental rights under Subsection E. It is therefore unnecessary to address Subsection Q. *See Interest of A.S.*, No. 02-19-004220-CV, 2020 Tex. App. LEXIS 1796, at *15 (Tex. App.—Fort Worth Mar. 2, 2020, no pet.) (mem. op.).

## Best Interest Findings

Both Mother and Father assert that the evidence is legally and factually insufficient to support the trial court's finding that termination of their parental rights was in the children's best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(2). We disagree.

APPLICABLE LAW

The non-exhaustive list of factors that have been consistently considered in determining the best interest of the child were set out in the Texas Supreme Court's opinion, *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). These factors are: (1) the child's wishes; (2) the child's emotional or physical needs now and in the future; (3) the emotional or physical danger to the child now and in the future; (4) the parenting abilities

of the parties seeking custody; (5) programs available to help those parties; (6) plans for the child by the parties seeking custody; (7) the stability of the proposed placement; (8) the acts or omissions of the parent that indicate that the existing parent-child relationship is not proper; and (9) any excuses for the acts or omissions of the parent. *See Id.* The *Holley* factors focus on the best interest of the child, not the best interest of the parent. *In re S.L.*, 421 S.W.3d 34, 38 (Tex. App.—Waco 2013, no pet.). There is no requirement that every factor must be proved as a condition precedent to parental termination, and the absence of evidence about some factors does not preclude a factfinder from reasonably forming a strong conviction that termination is in the child's best interest. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002).

DISCUSSION

In explaining the reasoning behind its best-interest finding, the trial court noted Mother's lack of protection from the illicit drug use and domestic violence in her home for a prolonged period of time. *C.H.*, 89 S.W.3d at 27-28 (considering evidence related to the predicate grounds under Texas Family Code Section 161.001(b)(1) as relevant to a best-interest determination); *See Interest of O.J.P.*, No. 01-21-00163-CV, 2021 Tex. App. LEXIS 7732, at *51-52 (Tex. App.—Houston [1st Dist.] Sept. 21, 2021, no pet.) (mem. op) (explaining that a child's exposure to violence in the home undermines the safety of the home environment and is relevant when considering the child's best interest); *See In re D.M.*, 452 S.W.3d 462, 471-74 (Tex. App.—San Antonio 2014, no pet.) (considering

children's exposure to narcotics in a best-interest analysis). The court recognized Mother's lack of improvement in areas of concern over the three-year period that her family had been involved with this trial court. Regarding Father, the trial court pointed to Father's lack of effort in fostering a parent-child relationship with D.L.-2, remarking specifically that Father did not take the opportunity to meet D.L.-2 when he was out of custody for a few months between periods of incarceration. The trial court could have reasonably concluded that the parent-child relationship between Father and D.L.-2 would continue to be non-existent once Father was released from custody. Further, Father's criminal activity shows a habit of engaging in violent behavior, and there is nothing in the record indicating Father has taken any steps to address this area of concern.

Moreover, permanence is of paramount importance in considering a child's present and future needs, and prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest. *See In re M.C.T.*, 250 S.W.3d 161, 170 (Tex. App.—Fort Worth 2008, no pet.); *See Interest of B.C.S.*, 479 S.W.3d 918, 927 (Tex. App. – El Paso 2015, no pet.). The record reflects that the Department has been involved with Mother and these two young children for several years, resulting in removals and multiple different placements. In spite of the many efforts made to safely return the children to Mother's care, including a failed monitored return in this case, the underlying concerns that precipitated the Department's involvement have not been resolved. Meanwhile, Father has spent a significant portion of D.L.-2's life in custody

and has never provided a stable home for the child. He testified that he is up for parole consideration in July of 2024, but as the trial court stated, there is no guarantee that parole will be granted. *See Interest of J.M.G.*, 608 S.W.3d 51, 56 (Tex. App.—San Antonio 2020, pet. denied). The children are now with an adoption-motivated foster family who has demonstrated a willingness to offer consistency and stability as well as proactively address the children's physical and emotional needs. We find the evidence is legally and factually sufficient to support the trial court's finding that termination of Mother's parental rights to D.L.-1 and D.L.-2 is in the children's best interest, and that termination of Father's parental rights was in D.L.-2's best interest.

We overrule Mother and Father's issues on appeal.

## Conclusion

Having overruled Mother and Father's issues on appeal, we affirm the judgment of the trial court.

STEVE SMITH
Justice

Before Chief Justice Gray,
    Justice Johnson, and
    Justice Smith
Affirmed
Opinion delivered and filed April 25, 2024
[CV06]

