

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-25-00782-CV

**IN THE INTEREST OF M.S.**, M.J.S., and N.E.S., Children

From the 198th Judicial District Court, Bandera County, Texas
Trial Court No. BADC-CVPC-24-0000371
Honorable Robert J. Falkenberg, Judge Presiding

Opinion by:     Irene Rios, Justice

Sitting:        Irene Rios, Justice
                Adrian A. Spears II, Justice
                Velia J. Meza, Justice

Delivered and Filed: June 10, 2026

AFFIRMED

Appellant Father appeals the trial court's order terminating his parental rights to his children, M.S., M.J.S., and N.E.S.[1]  In his first and second issues, Father challenges the sufficiency of the evidence supporting termination of his parental rights under statutory grounds (N) and (O). In his third issue, Father challenges the sufficiency of the evidence supporting the trial court's finding that termination of his parental rights was in the children's best interests.  We affirm.

---

[1] To protect the identity of minor children in an appeal from an order terminating parental rights, we refer to the children's parents as "Mother" and "Father," and we refer to the children using their initials or as "the children." *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

## BACKGROUND

The Department was providing the family with family-based safety services ("FBSS") before the children were removed. The Department was concerned with the condition of the family's home and that the children were being neglected. The Department also had concerns that Father was using methamphetamines. At some point, Mother and Father separated, and Mother and the children moved in with Mother's grandmother. The Department's FBSS caseworker checked in on Mother and the children in late 2024 and discovered Mother was drunk at 10:00 A.M. while she was supposed to be caring for the children. Father was not around and was not following recommendations from his drug assessment to address his drug addiction.

On December 3, 2024, the Department filed a petition seeking the children's removal and termination of Mother and Father's parental rights if reunification could not be achieved. Commendably, Mother engaged in services and the children were reunified with her. However, Father failed to engage in services and the Department pursued termination of his parental rights.

The trial court held a bench trial on November 14, 2025, adjudicating the Department's claim to terminate Father's parental rights. The trial court heard testimony from Mother; Alejandra Zertuche, a permanency specialist with the Department;[2] Jennifer Simmons, the Department's caseworker for FBSS; and the Court Appointed Special Advocate ("CASA") volunteer assigned to the case. Father did not attend the trial.

On December 12, 2025, the trial court signed an order terminating Father's parental rights to the children. The trial court terminated Father's parental rights based on statutory grounds (N)

---

[2] Alejandra Zertuche is employed by SJRC Texas Belong, a community-based care provider contracted by the Department. We refer to Zertuche as the Department's caseworker because SJRC Texas Belong is a contractor working on behalf of the Department.

and (O) in subsection 161.001(b)(1) of the Texas Family Code.[3]  *See* TEX. FAM. CODE ANN. §§ 161.001(b)(1)(N), (O).  The trial court also found it was in the children's best interests to terminate Father's parental rights.  *See id.* § 161.001(b)(2).  Father appeals.

### STATUTORY REQUIREMENTS AND STANDARD OF REVIEW

To terminate parental rights pursuant to section 161.001 of the Texas Family Code, the Department has the burden to prove by clear and convincing evidence: (1) one of the predicate grounds in subsection 161.001(b)(1); and (2) that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b).  Clear and convincing evidence requires "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."  *Id.* § 101.007.

When reviewing the sufficiency of the evidence, we apply well-established standards of review.  *See id.* §§ 101.007, 161.206(a); *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (conducting a factual sufficiency review); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (conducting a legal sufficiency review).

"In reviewing the legal sufficiency of the evidence to support the termination of parental rights, we must 'look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was

---

[3] When the Department filed its original petition, it pled termination under former statutory ground (P), alleging Father "used a controlled substance, as defined by Chapter 481, Health and Safety Code, in a manner that endangered the health or safety of the child, and (1) failed to complete a court-ordered substance abuse treatment program; or (2) after completion of a court-ordered substance abuse treatment program continued to abuse a controlled substance, pursuant to § 161.0001(b)(1)(P), Texas Family Code . . . ."  However, in 2025, the legislature amended section 161.001 of the family code and deleted former statutory ground (O), so that former statutory ground (P)—pertaining to a parent's failure to complete a court ordered substance abuse treatment program or continued abuse of a controlled substance after completion of a court ordered substance abuse treatment program—became the current statutory ground (O). *See In re A.J.L.*, No. 04-25-00651-CV, 2026 WL 1020548, at *3 n.6 (Tex. App.—San Antonio Apr. 8, 2026, no pet.); Act of May 14, 2025, 89th Leg., R.S., Ch. 211, § 2, sec. 161.001(b)(1),  2025 Tex. Sess. Law Serv. 573, 574–76 (codified at TEX. FAM. CODE § 161.001(b)(1)).  Some of the caselaw we refer to here may address the current statutory ground (O) as former statutory ground (P).

true.'" *In re J.L.B.*, No. 04-17-00364-CV, 2017 WL 4942855, at *2 (Tex. App.—San Antonio Nov. 1, 2017, pet. denied) (mem. op.) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). "[A] reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *J.F.C.*, 96 S.W.3d at 266. "A corollary to this requirement is that a [reviewing] court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.*

"In reviewing the factual sufficiency of the evidence to support the termination of parental rights, we 'must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing.'" *J.L.B.*, 2017 WL 4942855, at *2 (quoting *J.F.C.*, 96 S.W.3d at 266). "A [reviewing court] should consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *J.F.C.*, 96 S.W.3d at 266. "The [reviewing] court must hold the evidence to be factually insufficient if, in light of the entire record, the disputed evidence contrary to the judgment is so significant that a reasonable factfinder could not have resolved that disputed evidence in favor of the ultimate finding." *In re M.T.C.*, No. 04-16-00548-CV, 2017 WL 603634, at *2 (Tex. App.—San Antonio Feb. 15, 2017, no pet.) (mem. op.).

Further, in a bench trial, the trial court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *In re J.F.-G.*, 627 S.W.3d 304, 312, 317 (Tex. 2021). This is because "the trial judge is best able to observe and assess the witnesses' demeanor and credibility, and to sense the 'forces, powers, and influences' that may not be apparent from merely reading the record on appeal." *Coburn v. Moreland*, 433 S.W.3d 809, 823 (Tex. App.—Austin 2014, no pet.) (quoting *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.)). We, therefore, defer to the trial court's factual determinations and judgment

regarding credibility. *J.F.-G.*, 627 S.W.3d at 312; *see also In re R.R.A.*, 687 S.W.3d 269, 279 n.50 (Tex. 2024) ("Reviewing courts, however, must defer to the factfinder's judgment as to the credibility of the witnesses and the weight to give their testimony, including reasonable and logical inferences from the evidence.").

## STATUTORY GROUNDS FOR TERMINATION

In his first and second issues, Father argues there is insufficient evidence to support the trial court's findings under statutory grounds (N) and (O).

When paired with the necessary best interest findings, a trial court may terminate parental rights under statutory ground (O) if it finds by clear and convincing evidence that the parent "used a controlled substance, as defined by Chapter 481, Health and Safety Code, in a manner that endangered the health or safety of the child, and: (i) failed to complete a court-ordered substance abuse treatment program; or (ii) after completion of a court-ordered substance abuse treatment program, continued to abuse a controlled substance[.]" TEX. FAM. CODE. ANN. § 161.001(b)(1)(O). A parent's endangering conduct need not be directed at the child and does not require the child to actually suffer injury. *See R.R.A.*, 687 S.W.3d at 277. Thus, "endangerment does not require a parent's drug use to directly harm the child." *Id.* at 278. "While illegal drug use alone may not be sufficient to show endangerment, a pattern of drug use accompanied by circumstances that indicate related dangers to the child can establish a substantial *risk* of harm." *Id.* "A reviewing court should not evaluate drug-use evidence in isolation; rather, it should consider additional evidence that a factfinder could reasonably credit that demonstrates that illegal drug use presents a risk to the parent's ability to parent." *Id.* (internal quotation marks omitted).

Here, the trial court heard testimony that Father has a severe drug addiction to methamphetamines.[4] Mother testified Father would intravenously inject himself daily with methamphetamines. Father kept drugs in the home and used drugs while the children were present in the home. *See id.* at 277 ("[A] parent's use of narcotics and its effect on his or her ability to parent may qualify as an endangering course of conduct . . . ."). While under the influence of drugs, Father was emotionally detached and physically abusive. Father's service plan, which was admitted into evidence without objection, states that Father shot a gun by Mother's head to scare her, shot one of their dogs, threatened to kill Mother, often walked around with a gun to intimidate Mother, and threatened to shoot everyone in the courtroom if the children were removed. *See In re P.W.*, 579 S.W.3d 713, 727 (Tex. App.—Houston [14th Dist.] 2019, no pet.) ("Domestic violence, want of self-control, and propensity for violence may be considered as evidence of endangerment."). Mother testified Father would hit her frequently, ranging from daily to weekly. The service plan indicates the children were interviewed and disclosed occasions where they witnessed Father choking Mother, covering Mother's mouth, and hitting Mother hard enough to cause bruising. *See id.* ("A parent's abusive or violent conduct can produce a home environment that endangers a child's well-being.").

The trial court also heard testimony that the family suffered financial strain and, consequently, the children's home fell into a dilapidated state while Father was under the influence of drugs. There were holes in the floor of the home that led to mice and snake infestations in the home. At some point, the home burned down, and the family was forced to move into a metal shed with no running water. The children were not fed "hot meals" because there was no electricity. Because there was no running water, the children had to be driven to a local park to

---

[4] Methamphetamine is defined as a controlled substance in chapter 481 of the health and safety code. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.101; 481.102(6).

take showers. Mother testified they would remain unbathed and unkempt unless they "were given the opportunity to load up in [Father's] truck and go" to the park. Based on this evidence, the trial court could have reasonably concluded the children's exposure to this unsafe environment was a direct result of Father's drug addiction. Thus, the trial court could have reasonably formed a firm belief or conviction that Father used methamphetamines in a manner that endangered the health or safety of the children.

As mentioned above, Father's service plan was admitted into evidence without objection. The service plan states that Father "will successfully complete inpatient substance abuse treatment." The trial court's Status Hearing Order, signed March 14, 2025, was also admitted into evidence. The status hearing order states the trial court has reviewed Father's service plan and finds it narrowly tailored to address the specific issues identified by the Department. It further states that Father has reviewed and understands the service plan. Finally, the order states that Father's service plan was filed with the court, "and shall become orders of the [c]ourt."

The trial court heard evidence that Father has not engaged in services since his service plan became an order of the court and has not completed inpatient rehab as ordered by the court. Thus, the trial court could form a firm belief or conviction that Father used a controlled substance— methamphetamines—in a manner that endangered the health or safety of the children and failed to complete a court-ordered substance abuse treatment program. Therefore, we hold there is sufficient evidence supporting the trial court's statutory ground (O) finding and overrule Father's second issue.

Only one predicate ground finding under section 161.001(b)(1) is necessary to support a termination judgment when there is also a finding that termination is in the children's best interests. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). Having determined there was sufficient evidence to

support the trial court's statutory ground (O) finding, we need not address his challenge to the trial court's statutory ground (N) finding.  *See id.*; *see also* TEX. R. APP. P.  47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").

## BEST INTEREST

In his third issue, Father argues the evidence is legally and factually insufficient to support a finding that termination of his parental rights is in the children's best interests.

When considering the best interest of a child, we recognize the existence of a strong presumption that the child's best interest is served by preserving the parent-child relationship.  *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006).  However, we also presume that prompt and permanent placement of the child in a safe environment is in the child's best interest.  TEX. FAM. CODE ANN. § 263.307(a).

In determining whether a parent is willing and able to provide the child with a safe environment, we consider the factors set forth in section 263.307(b) of the Texas Family Code.[5]

---

[5] These factors include:

> (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child [or] the child's parents . . . ; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills . . . ; and (13) whether an adequate social support system . . . is available to the child.

TEX. FAM. CODE ANN. § 263.307(b).

*See id.* § 263.307(b). We also consider the *Holley* factors.[6] *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These factors are not exhaustive. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). "The absence of evidence about some of these considerations would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." *Id.* In analyzing these factors, we must focus on the best interest of the child, not the best interest of the parent. *Dupree v. Tex. Dep't of Protective & Regul. Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ).

Evidence that proves one or more statutory ground for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.H.*, 89 S.W.3d at 28 (holding same evidence may be probative of both section 161.001(b)(1) grounds and best interest, but such evidence does not relieve the State of its burden to prove best interest). "A best-interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence." *See In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). "A trier of fact may measure a parent's future conduct by his past conduct and determine whether termination of parental rights is in the child's best interest." *Id.*

"Illicit drug use is relevant to multiple *Holley* factors, including the children's emotional and physical needs now and in the future, the emotional and physical danger to the children now and in the future, [a parent's] parental abilities, the stability of [the parent's] home, and the acts or omissions which may indicate an improper parent-child relationship." *In re A.N.*, No. 04-19-

---

[6] These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *see also In re E.C.R.*, 402 S.W.3d 239, 249 n.9 (Tex. 2013).

00584-CV, 2020 WL 354773, at *3 (Tex. App.—San Antonio Jan. 22, 2020, no pet.) (mem. op.). As mentioned in the statutory grounds section, Father has an extensive history with drug abuse. Mother testified Father began using methamphetamines in 2020. *See* TEX. FAM. CODE ANN. § 263.307(b)(8) (stating a parent's history of substance abuse is a factor considered by the trial court in determining whether the parent is able to provide the child with a safe environment). After he started using drugs, Father became emotionally detached and physically abusive. According to Mother, Father was not coherent when he was in the home and did not give any of the children attention, nor did he help Mother feed, clothe, or bathe the children.

Mother stated Father's drug abuse put the family under financial strain which led to the children's exposure to terrible living conditions. After the trailer house burned down, the record indicates the family lived in a shed without running water for more than a year until the children moved in with Mother's grandmother. Mother testified that no matter how much she begged, Father did nothing to help improve the living conditions.

The trial court heard ample testimony that Father has not addressed his addiction to methamphetamines. "Continued illegal drug use by the parent is conduct that jeopardizes parental rights and may be considered as establishing an endangering course of conduct, and that termination is in the best interest of the child." *In re J.S.R.*, No. 04-21-00517-CV, 2022 WL 1559107, at *4 (Tex. App.—San Antonio May 18, 2022, pet. denied) (mem. op.) (alterations omitted).

The trial court also heard testimony that Father has been selling drugs since 2022. *See In re G.V.S.*, No. 04-18-00563-CV, 2018 WL 6624398, at *4 (Tex. App.—San Antonio Dec. 19, 2018, pet. denied) (mem. op.) ("A parent's criminal activities and history are also relevant to a best interest analysis—specifically to the emotional and physical danger to the child."). Although

Mother has not had contact with Father in over a year, she is concerned Father is still actively engaged in selling drugs and is concerned the children will be exposed to dangerous situations if Father's parental rights are not terminated. *In re R.M.H.*, No. 04-23-00765-CV, 2023 WL 8103188, at *4 (Tex. App.—San Antonio Nov. 22, 2023, no pet.) (mem. op.) ("[R]outinely subjecting a child to the probability that [the child] will be left alone because [the child's] parent is in jail endangers the child's physical and emotional well-being.").

Alejandra Zertuche, the Department's caseworker, stated she went over Father's service plan with him, and he was aware of the services he needed to complete to show the Department that he can provide the children with a safe and stable environment. Zertuche testified she would attempt to contact Father at least twice a month during the pendency of the case, but Father rarely responded. Zertuche submitted all the necessary referrals for services and made repeated attempts to schedule a meeting with Father to discuss his services. Zertuche stated the Department was initially concerned with domestic violence and Father's drug addiction; however, Father has not made any effort to address either concern, and he was not compliant with his service plan.

Father had not seen the children in over year at the time of trial. The trial court ordered Father to have no contact with the children until he completed inpatient drug treatment. However, Father never engaged in services and didn't complete inpatient drug treatment to obtain visitation rights. The trial court heard testimony that Father never asked how the children were doing and did not provide any type of support for the children during the pendency of the case. Mother, Zertuche, and the CASA volunteer all testified termination of Father's parental rights would be in the children's best interests because Father has not addressed his drug addiction or domestic violence issues and has not shown that he can provide the children with a safe and stable environment.

In contrast, Mother engaged in services and the children were reunified with Mother pursuant to a monitored return. Mother stated she has been able to turn her life around and provide the children with a safe and stable home, and she opined that her progress with the children would be put in jeopardy if Father was still around and maintained his parental rights.

In sum, the trial court heard testimony that Father has not made any efforts to address his drug addiction and domestic violence issues despite persistent efforts from the Department to get Father engaged in his services. The CASA volunteer opined that Father has not shown an ability "to provide [the] children with a safe, stable, drug free, violence free home" because he has not engaged in any services to address the concerns that led to removal. The trial court was entitled to consider Father's past behavior when assessing whether Father would be able to provide the children with a safe environment. *See E.D.*, 419 S.W.3d at 620 ("A trier of fact may measure a parent's future conduct by his past conduct and determine whether termination of parental rights is in the child's best interest."). Because Father's drug addiction caused the children to be exposed to an unsafe environment in the past, the trial court could have reasonably formed a firm belief or conviction that Father's failure to address his drug addiction indicates he is unable to provide the children with a safe environment in the future.

Having reviewed the record and considered all the evidence in the appropriate light for each standard of review, we conclude the trial court could have formed a firm belief or conviction that termination of Father's parental rights was in the children's best interests. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *H.R.M.*, 209 S.W.3d at 108; *J.P.B.*, 180 S.W.3d at 573; *see also generally In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (recognizing a reviewing court need not detail the evidence if affirming a termination judgment). Therefore, we hold the evidence is legally and factually sufficient to support the trial court's best interest findings.

Accordingly, Father's third issue is overruled.

## CONCLUSION

We affirm the trial court's order terminating Father's parental rights to the children.


Irene Rios, Justice